Filed 12/20/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

JEREMIAH SMITH,

     Plaintiff and Appellant,

v.

LOANME, INC.,

     Defendant and Respondent.

E069752

(Super.Ct.No. RIC1612501)

OPINION

APPEAL from the Superior Court of Riverside County. Sharon J. Waters, Judge. Affirmed.

Law Offices of Todd M. Friedman, Todd M. Friedman and Adrian R. Bacon for Plaintiff and Appellant.

Finlayson Toffer Roosevelt & Lilly, Michael R. Williams and Jared M. Toffer for Defendant and Respondent.

Jeremiah Smith filed a class action complaint against LoanMe, Inc. (LoanMe), alleging that LoanMe violated the California Invasion of Privacy Act (Privacy Act)

(Pen. Code, § 630, et seq.).[1] Smith alleged that LoanMe violated section 632.7 by recording a phone call with Smith without his consent while he was using a cordless telephone, and he claimed that a "beep tone" at the beginning of the call did not constitute sufficient notice that LoanMe was recording the call. In a bifurcated trial about the beep tone issue, the trial court concluded that (1) the beep tone provided sufficient notice to Smith that the call was being recorded, and (2) Smith implicitly consented to being recorded by remaining on the call.

We requested supplemental briefing on the issue of whether section 632.7 applies to the recording of a phone call by a participant in the phone call or instead applies only to recording by third party eavesdroppers. We asked that the briefs address the question in light of the plain language of section 632.7, its legislative history, and its relationship with other provisions of the Privacy Act. No California appellate opinion addresses the issue. Several federal district courts in California have analyzed the issue, and they are not in agreement.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Brinkley v. Monterey Fin. Servs., LLC* (S.D.Cal. 2018) 340 F.Supp.3d 1036, 1042-1043 (*Brinkley*); *Ades v. Omni Hotels Mgmt. Corp.* (C.D.Cal. 2014) 46 F.Supp.3d 999, 1017-1018; *Raffin v. Medicredit, Inc.* (C.D.Cal. Jan. 3, 2017, No. CV 15-4912-GHK (PJWx)) 2017 WL 131745, at pp. *6-*9; *Lal v. Capital One Fin. Corp.* (N.D.Cal. Apr. 12, 2017, No. 16-cv-06674-BLF) 2017 WL 1345636, at p. *8; *Ramos v. Capitol One, N.A.* (N.D.Cal. July 27, 2017, No. 17-cv-00435-BLF) 2017 WL 3232488, at pp. *8-*9; *Horowitz v. GC Services Ltd. Partnership* (S.D.Cal. Apr. 28, 2015, No. 14cv2512-MMA (RBB)) 2015 WL 1959377, at pp. *11-*12; *Young v. Hilton Worldwide, Inc.* (C.D.Cal. July 11, 2014, No. 2:12-cv-01788-R-(PJWx) 2014 WL 3434117, at pp. *1-*2; *Rezvanpour v. SGS Auto. Servs., Inc.* (C.D.Cal. July 11, 2014, No. 8:14-cv-00113-ODW (JPRx)) 2014 WL 3436811, at p. *4; *Montantes v. Inventure Foods* (C.D.Cal. July 2,

We conclude that section 632.7 prohibits only third party eavesdroppers from intentionally recording telephonic communications involving at least one cellular or cordless telephone. Conversely, section 632.7 does not prohibit the participants in a phone call from intentionally recording it. Consequently, Smith failed to state a claim against LoanMe under section 632.7. We therefore affirm the trial court's dismissal of Smith's lawsuit.

## BACKGROUND[3]

LoanMe is in the business of providing personal and small business loans. Smith's wife is the borrower on a loan from LoanMe. In October 2015, an employee of LoanMe called the telephone number provided to LoanMe by Smith's wife to discuss the loan. Smith answered the call on a cordless telephone and informed the caller that his wife was not available, and the call then ended. The call lasted approximately 18 seconds. LoanMe recorded the call. Three seconds into the call LoanMe "caused a 'beep tone' to sound." It is LoanMe's practice to cause a beep tone to play at regular 15 second intervals on all of its outbound calls. LoanMe did not orally advise Smith that the call

---

2014, No. CV-14-1128-MWF (RZx)) 2014 WL 3305578, at. pp. *2-*4; *Simpson v. Vantage Hospitality Group, Inc.* (N.D.Cal. Dec. 4, 2012, No. 12-cv-04814-YGR) 2012 WL 6025772, at pp. *5-*6; *Simpson v. Best Western Intern., Inc.* (N.D.Cal. Nov. 9, 2012, No. 3:12-cv-04672-JCS) 2012 WL 5499928, at pp. *6-*9; *Brown v. Defender Sec. Co.* (C.D.Cal. Oct. 22, 2012, No. CV 12-7319-CAS (PJWx)) 2012 WL 5308964, at pp. *4-*5; *Kuschner v. Nationwide Credit, Inc.* (E.D.Cal. 2009) 256 F.R.D. 684, 688; *Ronquillo-Griffin v. Telus Communs., Inc.* (S.D.Cal. June 27, 2017, No. 17cv129 JM (BLM)) 2017 WL 2779329, at pp. *3-*4.

[3]    We take these facts from the stipulation that the parties entered into for purposes of the bench trial.

was being recorded. Smith also did not sign a contract granting LoanMe consent to record calls.

In September 2016, Smith filed a class action complaint against LoanMe, alleging that LoanMe recorded phone calls without consent in violation of section 632.7 and seeking statutory damages and injunctive relief.[4] On the parties' stipulation, the trial court ordered a bifurcated bench trial to resolve the "the beep tone issue." After listening to a recording of the phone call, the trial court concluded that the beep tone provided Smith sufficient notice under section 632.7 that the call was being recorded and that Smith implicitly consented to being recorded by remaining on the call. The trial court entered judgment against Smith.

DISCUSSION

A. *Analytical Framework for Statutory Interpretation*

In interpreting a statute, our goal " ' ' ' ' 'is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' " ' ' ' (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856 (*Meza*).) In other words, "[t]he meaning of a

---

[4]    Smith argues for the first time on appeal that "LoanMe infringed on [his] right to privacy guaranteed by the California Constitution." Because Smith did not include a constitutional cause of action in his complaint and did not litigate the issue in the trial court, we do not address it. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [" ' ' ' 'Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived' ' ' ' "].)

4

statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) "'''''If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'''''" (*Meza*, *supra*, at p. 856.)

We independently review questions of statutory interpretation. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.)

B. *The Privacy Act Provisions Relating to Cordless and Cellular Phones, and Section 632*

In 1967, the Legislature enacted the Privacy Act "to protect the right of privacy of the people of this state" from technological advances that "led to the development of new devices and techniques for the purpose of eavesdropping upon private communications." (§ 630.) The Legislature considered eavesdropping on private communications a serious threat that "cannot be tolerated in a free and civilized society." (§ 630; *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 115 (*Kearney*) [describing the Privacy Act as "a broad, protective invasion-of-privacy statute"].)

One of the provisions of the original 1967 legislation—section 632—prohibits the intentional recording of a confidential telephone communication without the consent of

all parties. (*Kearney*, *supra*, 39 Cal.4th at p. 117.) In relevant part, section 632, subdivision (a), provides: "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by" a fine, imprisonment, or both. For purposes of the statute, "person" includes businesses. (§ 632, subd. (b).)

In addition to section 632's creation of criminal liability for this invasion of a person's privacy, section 637.2, which was also part of the original legislation, "explicitly created a new, statutory private right of action, authorizing any person who has been injured by any violation of the invasion-of-privacy legislation to bring a civil action to recover damages and to obtain injunctive relief in response to such violation." (*Kearney*, *supra*, 39 Cal.4th at pp. 115-116.) Any person injured by a violation of the Privacy Act may recover $5,000 per violation. (§ 637.2, subd. (a)(1).)

In 1985, in response to the early stages of technological advances in wireless communication, particularly cellular radio telephones, the Legislature enacted section 632.5 as part of the Cellular Radio Telephone Privacy Act of 1985 (a subpart of the Privacy Act). (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 775.) Section 632.5 provides in relevant part: "Every person who, maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a

communication transmitted between cellular radio telephones or between any cellular radio telephone and a landline telephone shall be punished by" a fine, imprisonment, or both.  (§ 632.5, subd. (a).)

In 1990, the Legislature amended the 1985 legislation, renaming it the Cordless and Cellular Radio Telephone Privacy Act of 1985.  The amendment added section 632.6, which uses the same language as section 632.5 to extend the same protection to cordless telephones instead of cellular telephones.  Under section 632.6, "[e]very person who, maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a communication transmitted between cordless telephones . . . , between any cordless telephone and a landline telephone, or between a cordless telephone and a cellular telephone shall be punished by" a fine, imprisonment, or both.  (§ 632.6, subd. (a); see also § 632.6, subd. (c) [defining cordless telephones as "consisting of two parts—a 'base' unit which connects to the public switched telephone network and a handset or 'remote' unit—which are connected by a radio link"].)

In 1992, the Legislature amended the Cordless and Cellular Radio Telephone Privacy Act of 1985 to add section 632.7.  Section 632.7, subdivision (a), provides in relevant part:  "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a

7

cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by" a fine, imprisonment, or both.

To summarize:  Sections 632.5, 632.6, and 632.7 are all parts of the Cordless and Cellular Radio Telephone Privacy Act of 1985.  Section 632.5 prohibits the malicious and nonconsensual interception or receipt of cellular phone calls.  Section 632.6 prohibits the malicious and nonconsensual interception or receipt of cordless phone calls.  Section 632.7 prohibits the nonconsensual interception or receipt and intentional recording of cellular and cordless phone calls.  That is, section 632.7 differs from sections 632.5 and 632.6 in that it (1) removes the element of malice, (2) adds the element of (nonconsensual) intentional recording, and (3) covers both cellular phones and cordless phones in a single code provision.

There are no California cases interpreting sections 632.5, 632.6, and 632.7.

C. *Plain Language Interpretation of Section 632.7*

LoanMe contends that section 632.7 clearly and unambiguously applies only to third party eavesdroppers.  Smith contends, to the contrary, that section 632.7 clearly and unambiguously applies to the parties to the phone call as well as to third party eavesdroppers.  The mere existence of the parties' disagreement does not show that the statute is unclear or ambiguous.  (See *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 597.)  We conclude that LoanMe is correct.

Section 632.7 imposes liability on any person "who, without the consent of all parties to a communication, intercepts or receives and intentionally records" a

communication involving a cellular phone or a cordless phone. The statute thus requires that the interception or receipt of the communication be without the parties' consent. But the parties to a phone call always consent to the receipt of their communications by each other—that is what it means to be a party to the call (or at least that is part of what it means). In this case, for example, LoanMe consented to Smith's receipt of LoanMe's communications ("Is Mrs. Smith there?"), and Smith consented to LoanMe's receipt of Smith's communications ("No."). Consequently, the parties to a phone call are incapable of violating section 632.7, because they do not intercept or receive each other's communications without all parties' consent.

That interpretation of the plain meaning of section 632.7 aligns with the plain meaning of sections 632.5 and 632.6, whose language section 632.7 borrows. Sections 632.5 and 632.6 impose liability on anyone "who, maliciously and without the consent of all parties to the communication, intercepts [or] receives" a communication involving a cellular phone (§ 632.5) or a cordless phone (§ 632.6). Like section 632.7, sections 632.5 and 632.6 cannot apply to the parties to a phone call, because sections 632.5 and 632.6 apply only to someone who intercepts or receives a communication without all parties' consent. Sections 632.5 and 632.6 thus prohibit only malicious third party eavesdropping on cordless or cellular phone calls.[5]

---

[5] The requirement that the alleged wrongdoer intercept or receive the communication without all parties' consent distinguishes sections 632.5, 632.6, and 632.7 from section 632, which also contains a consent requirement *but applies it to different conduct.* Section 632 provides that "[a] person who, intentionally and without the consent of all parties to a confidential communication, *uses an electronic amplifying or*

9

A contrary interpretation, according to which sections 632.5 and 632.6 apply not only to third party eavesdroppers but also to the parties to cordless and cellular phone calls, would be absurd and unintelligible. First, in order for a party to a call to be liable under either section, the party would have to receive the other party's communications *without all parties' consent*. We do not see how that is possible. As we have already explained, if one is a party to a call, then, by that very fact, one consents to the other party's receipt of one's communications—that is (part of) what it means to be a party to the call. Second, in order for a party to a call to be liable under either section, the party would have to receive the other party's communications *maliciously*. Again, we do not see how that is possible—it is not clear what it would mean for one party to receive the other party's communications *with malice*. Statutory interpretations that lead to absurd results are to be avoided. (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 (*Tuolumne*).)

There is at least one additional problem with interpreting sections 632.5 and 632.6 as applying to parties and not solely to third party eavesdroppers. The provisions apply only if at least one of the phones used in the call is a cellular or cordless phone. Consequently, if the provisions could apply to parties to the call, then they would impose liability on the basis of factors that are often beyond the putative wrongdoer's knowledge

*recording device to eavesdrop upon or record* the confidential communication" shall be punished by a fine, incarceration, or both. (Italics added.) Although parties to a phone call always consent to each other's receipt of their communications, they do not always consent to the use of an electronic amplifying or recording device to eavesdrop upon or record the communication. It is consequently unsurprising that section 632 can apply to the parties to a communication. (*Kearney*, *supra*, 39 Cal.4th at pp. 117-118.)

10

or control.  For example, if you answered a call on a landline phone maliciously and without consent (whatever that might mean), then you would thereby be liable if the call was placed from a cellular phone (§ 632.5) or a cordless phone (§ 632.6) but not if it was placed from a landline phone.  Likewise, if you placed a call from a landline phone maliciously and without consent (whatever that might mean), then you would thereby be liable if the call was answered on a cellular phone (§ 632.5) or a cordless phone (§ 632.6) but not if it was answered on a landline phone.  But one often (though not always) has no way of knowing what kind of phone the other party to a call is using, and no way of controlling it.  Thus, if the statutes were interpreted as applying to parties, they would impose liability on the basis of pure happenstance.  Again, such a result is absurd, and any interpretation leading to it is to be avoided.  (*Tuolumne*, *supra*, 59 Cal.4th at p. 1037.)

That problem is not mere speculation or conjecture and is not limited to sections 632.5 and 632.6.  Rather, the same problem arises under section 632.7, and the alleged facts of the instant case actually illustrate it.  LoanMe called Smith's home, and Smith allegedly answered the call on a cordless phone.  Had Smith answered on a landline phone, section 632.7 could not apply under any interpretation, assuming LoanMe too was using a landline.  But because of the happenstance that Smith allegedly answered on a cordless phone—a fact that was absolutely beyond LoanMe's knowledge or control—section 632.7 as interpreted by Smith subjects LoanMe to criminal and civil liability.  Once again, the result is absurd.

11

All of those problems with all three statutes are avoided by following the plain meaning of the requirement that the communication be intercepted or received "without the consent of all parties," which all three statutes include. That phrase limits application of all three statutes to third party eavesdroppers, and that limitation explains why the statutes treat landlines differently from cellular and cordless phones: The manifest purpose of all three statutes is to target the greater vulnerability of wireless communications to third party listening and recording. So interpreted, the statutes do not impose liability on the basis of factors beyond the knowledge or control of the wrongdoer. A third party eavesdropping on a wireless communication is ordinarily aware that the communication is wireless.

In sum, we see no viable alternative to interpreting sections 632.5 and 632.6 as limited to third party eavesdroppers, because they apply only to persons who intercept or receive communications without all parties' consent. Section 632.7 contains the same restriction in the same language ("without the consent of all parties . . . intercepts or receives"), and we must interpret section 632.7 in a way that harmonizes it with the statutory scheme of which it is a part. (*Meza*, *supra*, 6 Cal.5th at p. 856.) For all of the foregoing reasons, we conclude that section 632.7 clearly and unambiguously applies only to third party eavesdroppers, not to the parties to a phone call.

D. *Intercepts or Receives*

Smith's argument to the contrary is based on section 632.7's use of the phrase "intercepts or receives." Smith reasons that because the statute uses both of the terms

12

"intercepts" and "receives," those terms must refer to different types of conduct. "Intercepts" is naturally understood as referring to eavesdropping, so "receives" must refer to something else. And the parties to a phone call do receive each other's communications from each other. Therefore, Smith concludes, section 632.7 applies to the parties to a phone call, because they receive each other's communications. Several federal decisions endorse the same line of argument. (See *Ades v. Omni Hotels Management Corp.*, *supra*, 46 F.Supp.3d at pp. 1017-1018; *Ronquillo-Griffin v. Telus Communs., Inc.*, *supra*, 2017 WL 2779329, at pp. *3-*4; *Horowitz v. GC Services Ltd. Partnership*, *supra*, 2015 WL 1959377, at p. *11; *Montantes v. Inventure Foods*, *supra*, 2014 WL 3305578 at p. *3; *Simpson v. Best Western Intern., Inc.*, *supra*, 2012 WL 5499928, at p. *8; *Brown v. Defender Sec. Co.*, *supra,* 2012 WL 5308964, at pp. *4-*5.)

We conclude that Smith's argument lacks merit because it offers no solution to the fundamental problem identified in Part C, *ante*: Section 632.7 applies only to persons who receive (or intercept) communications *without all parties' consent*. Because the parties to a phone call do consent to each other's receipt of each other's communications, section 632.7 cannot apply to them. The federal decisions (with one exception, which we address in Part E, *post*) likewise fail to address this point, so we do not find their reasoning persuasive.

There is a related and equally conclusive reason why Smith's argument is meritless. As explained in Part C, *ante*, sections 632.5 and 632.6 incontrovertibly apply only to third party eavesdroppers, not to the parties to a call. But sections 632.5 and

13

632.6 employ the same language as section 632.7—they expressly apply to anyone who "intercepts" or "receives" a wireless communication maliciously and without consent. Consequently, regardless of what exactly "receives" means in sections 632.5 and 632.6, and regardless of how it differs from "intercepts," it *must* mean some form of eavesdropping, because sections 632.5 and 632.6 apply only to eavesdropping. And whatever "receives" means in sections 632.5 and 632.6, it can and presumably does mean the same thing in section 632.7. Smith's argument—that in section 632.7 "intercepts" refers to eavesdropping, so "receives" must refer to something else—therefore fails.

For the foregoing reasons, the precise meaning of "receives" in sections 632.5, 632.6, and 632.7 does not really matter, because sections 632.5 and 632.6 show that both "intercepts" and "receives" must refer to forms of eavesdropping. One possibility is that "intercepts" refers to more active, targeted eavesdropping (perhaps directed at a specific phone number or wireless frequency), while "receives" refers to more passive, less specific eavesdropping (perhaps via a scanner that sweeps up a broad spectrum of wireless signals). Another possibility is that "intercepts" refers to eavesdropping in which the wireless signal is captured and prevented from reaching its intended target, while "receives" refers to eavesdropping in which the wireless signal reaches its intended target despite also being picked up by the eavesdropper. But again, regardless of exactly what "receives" means, sections 632.5 and 632.6 demonstrate that it must mean some form of eavesdropping.

We therefore reject Smith's argument. The phrase "intercepts or receives" in section 632.7 does not indicate that the statute applies to the parties to a phone call. Rather, the statutory language is fully consistent with our interpretation of section 632.7 (and sections 632.5 and 632.6) as applying only to third party eavesdroppers.

E. *Brinkley v. Monterey Financial Services, LLC*

One federal case contains an additional argument against our interpretation of section 632.7. In *Brinkley v. Monterey Fin. Servs., LLC*, *supra*, 340 F.Supp.3d 1036 (*Brinkley*), the court concluded that section 632.7 is susceptible of two reasonable interpretations, and the court used the statute's legislative history to resolve the ambiguity. (*Brinkley*, at p. 1043.) We disagree with the court's analysis—the statute is not ambiguous, so resort to its legislative history is not necessary. But we address the court's analysis in detail because it is the only argument of which we are aware that recognizes section 632.7's consent requirement but ultimately reaches a conclusion different from our own.

The *Brinkley* court begins by acknowledging that in section 632.7, the phrase "'without the consent of all parties to a communication'" can reasonably be interpreted as modifying "both 'intercepts or receives' and 'intentionally records.'" (*Brinkley*, *supra*, 340 F.Supp.3d at p. 1043.) That is how we interpret it: The statute is violated only if the defendant (1) intercepts or receives a communication without all parties' consent *and* (2)

15

intentionally records the communication without all parties' consent.[6] On that

interpretation, the statute cannot be violated if the communication was received with all

parties' consent.

But the *Brinkley* court next concludes that the following alternative interpretation

is also reasonable: The statute is violated whenever the defendant (1) intercepts-and-

intentionally-records a communication without all parties' consent, *or* (2) receives-and-

intentionally-records a communication without all parties' consent. (*Brinkley*, *supra*, 340

F.Supp.3d at p. 1043.) On that interpretation, the statute is violated if the defendant

*receives* the communication *with* all parties' consent but *intentionally records* it *without*

all parties' consent, because in that situation the parties did not consent to receipt-and-

intentional-recording of the communication. (*Ibid.*)

We do not agree that such an interpretation of section 632.7 is reasonable. By its

terms, section 632.7 is violated by "[e]very person who, without the consent of all parties

to a communication, intercepts or receives and intentionally records, or assists in the

interception or reception and intentional recordation of, a communication" involving a

cordless or cellular phone. The introductory prepositional phrase "without the consent of

all parties to a communication" appears on its face to modify the entire verb phrase

"intercepts or receives and intentionally records." We do not believe it is reasonable to

suppose that by such language the Legislature intended to enact a criminal prohibition

---

[6]     This is actually an oversimplification, because section 632.7 also applies to a
defendant who *assists* in the nonconsensual interception or reception and intentional
recording. Sections 632.5 and 632.6 likewise apply to those who *assist* in the
interception or reception. That complication does not affect our analysis.

that can be violated by someone who receives a communication *with* the consent of all parties.

The unreasonableness of such an interpretation is apparent when section 632.7 is considered in light of its predecessors, sections 632.5 and 632.6. Sections 632.5 and 632.6 are violated by "[e]very person who, maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a communication" involving a cellular (§ 632.5) or cordless (§ 632.6) phone. The clear and unambiguous effect of the consent requirement is to limit sections 632.5 and 632.6 to third party eavesdroppers—the statutes are violated only if the communication was intercepted or received without all parties' consent. It is therefore not reasonable to suppose that when the Legislature enacted section 632.7, it used the same language ("without the consent of all parties to the communication, intercepts or receives") to create a criminal prohibition that can be violated even if the communication was intercepted or received *with* all parties' consent.

For all of the foregoing reasons, we conclude that the alternative interpretation of section 632.7 identified in *Brinkley*, *supra*, 340 F.Supp.3d 1036, is not reasonable. The analysis in *Brinkley* therefore does not undermine our prior conclusion that section 632.7 clearly and unambiguously is limited to third party eavesdroppers.

F. *Legislative History*

Because section 632.7 is clear and unambiguous, we need not consult its legislative history to determine the statute's meaning. We discuss the legislative history

17

nonetheless, both out of an abundance of caution and because both Smith and several federal cases claim that the legislative history shows that section 632.7 was intended to prohibit recording by the parties to a phone call, not just by third party eavesdroppers. (See *Brinkley*, *supra*, 340 F.Supp.3d at p. 1043; *Ronquillo-Griffin v. Telus Communs., Inc.*, *supra*, 2017 WL 2779329, at \*3-\*4; *Simpson v. Best Western Intern., Inc.*, *supra*, 2012 WL 5499928, at \*8.) We conclude that Smith and the federal cases are mistaken and that the legislative history supports our interpretation of section 632.7.[7]

When the Legislature enacted section 632.5 in 1985 and section 632.6 in 1990, the Legislature's sole concern was that eavesdroppers could more easily access conversations occurring over cellular and cordless phones than over landline phones. The 1985 legislation was enacted in response to media reports of "widespread eavesdropping on cellular radio telephone conversations" and of devices "being developed with the sole or primary purpose of listening in on car telephone conversations." (Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 1431 (1985-1986 Reg. Sess.) Aug. 19, 1985, p. 1.) Concerned about the ease with which it was "possible to listen in on conversations randomly picked up by radio scanners and other scanning devices specifically designed to pick up cellular conversations" (*ibid.*), section 632.5 was enacted to "establish[ ] criminal penalties for persons who intercept or eavesdrop on a conversation where one or more parties uses a radio telephone." (Legis. Analyst, analysis of Sen. Bill No. 1431 (1985-

---

[7] Smith attempted to file a request for judicial notice of certain portions of the legislative history, but our clerk's office rejected the filing because of nonconformance with procedural requirements. Smith did not refile the request. In any event, we have reviewed the legislative histories of sections 632.5, 632.6, and 632.7.

1986 Reg. Sess.) as Amended Aug. 27, 1985.) In response to the same concern about cordless telephones, in 1990 section 632.6 was enacted to "prohibit[] the malicious interception of communications—eavesdropping—between cordless telephones" and other phones. (Legis. Analyst, analysis of Assem. Bill No. 3457 (1989-1990 Reg. Sess.) as Amended Apr. 26, 1990.)

The legislative history thus shows that sections 632.5 and 632.6 were intended to apply only to third party eavesdroppers. The legislative history of sections 632.5 and 632.6 thus supports our interpretation of section 632.7, because (1) the legislative history shows that sections 632.5 and 632.6 target only eavesdroppers, not the parties to wireless phone calls; (2) the Legislature wrote that limitation into sections 632.5 and 632.6 by requiring that the communication be intercepted or received "without the consent of all parties to the communication" (§§ 632.5, 632.6); and (3) the Legislature used the same language in section 632.7.

The legislative history of section 632.7 itself, however, is somewhat less clear, largely because it contains certain statements that appear ambiguous when taken out of context. For example, the analysis by the Senate Rules Committee quotes the bill's author as follows: Under the proposed legislation, "'[t]he innocent, merely curious, or non-malicious interception of cellular or cordless telephone conversation will remain legal. However, it will be illegal to record the same conversations. Henceforth, persons using cellular or cordless telephones may do so knowing that their conversations are not

19

being recorded.'"[8]  (Sen. Rules Com., Off. of Sen. Floor Analyses Rep. on Assem. Bill No. 2465 (1992 Reg. Sess.) June 1, 1992, p. 3.)  Considered in isolation, that passage is ambiguous.  On the one hand, it could mean that it will be illegal for *anyone* to record cellular and cordless phone conversations.  On the other hand, it could mean that it will be illegal for *eavesdroppers* (who are referred to in the first quoted sentence) to record cellular and cordless phone conversations.

Even without considering the broader context, we find the latter interpretation more plausible, for two reasons.  First, the statement that "it will be illegal to record the same conversations" *must* be incomplete, because it omits both the requirement that the parties do not consent and the requirement that the recording be intentional.  Thus, the lack of an explicit reference to eavesdroppers in that sentence does not mean that the prohibition on recording is not limited to eavesdroppers.  Second, the first quoted sentence is about eavesdroppers ("interception of cellular or cordless telephone conversations"), and it is difficult to understand the connection between that sentence and the two that follow it if they are not similarly limited to eavesdroppers.

---

[8]     The Senate Rules Committee quoted extensively from and adopted the statement of intent from the bill's author, Senator Connelly.  (Sen. Rules Com., Off. of Sen. Floor Analyses Rep. on Assem. Bill No. 2465 (1992 Reg. Sess.) June 1, 1992, p. 3.)  "Although the motives or understanding of individual legislators cannot be considered in determining the meaning of the bill, a legislator's statement is entitled to consideration 'when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion.'"  (*Bosley Medical Group v. Abramson* (1984) 161 Cal.App.3d 284, 290.)

Because the author's statement of intent was incorporated into the Senate Rules Committee's analysis, we assume that the author's understanding of the bill was considered by the entire Legislature as part of its analysis.  (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700.)

Consideration of the broader context confirms that interpretation. The Senate Rules Committee's analysis shows that the animating concern behind the legislation is the vulnerability of wireless communications to eavesdropping. "'The primary intent'" of the statute "'is to provide a greater degree of privacy and security to persons who use cellular or cordless telephones.'" (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 2465 (1992 Reg. Sess.) June 1, 1992, p. 3.) Cordless and cellular phones are "'inherently[] less secure'" than landlines, which therefore carry "'a greater expectation of privacy.'" (*Ibid.*) But while users of cordless and cellular phones might consequently assume that their wireless communications are relatively vulnerable to unauthorized third party listening, they will not "'reasonably anticipate that their conversations will be both intercepted and recorded'" (*ibid.*), that is, recorded by eavesdroppers. And as the "'popularity of cellular and cordless telephones'" continues to grow, "'the opportunity for unscrupulous individuals to intercept and record conversations grows.'" (*Id.* at pp. 3-4.)

Thus, read as a whole, the Senate Rules Committee analysis reflects the Legislature's concern about recording of cordless and cellular phone calls by third party eavesdroppers. The analysis contains not a hint of concern about recording by the parties to the calls. It is therefore unreasonable to interpret the ambiguous language quoted *ante* ("it will be illegal to record the same conversations") as meaning that the bill would make it illegal for *anyone* to record cellular or cordless phone calls. The Legislature was not interested in recording by parties. The Legislature was targeting recording by

21

eavesdroppers, so it used the same language it had used in sections 632.5 and 632.6, which target eavesdroppers.

Similar observations hold true of all of the legislative history materials that we have reviewed.  Throughout the legislative history of section 632.7, the Legislature demonstrates its concern with eavesdropping on wireless communications, and it never shows any concern about recording by parties.  We therefore conclude that the legislative history supports our interpretation of section 632.7 as limited to third party eavesdroppers.

To summarize:  The plain language of section 632.7 clearly and unambiguously applies to third party eavesdroppers alone, not to the parties to cellular and cordless phone calls.  The legislative history of section 632.7 confirms that interpretation.  We must therefore affirm the judgment in favor of LoanMe, because Smith alleges only that LoanMe recorded calls to which LoanMe was a party.

DISPOSITION

The judgment is affirmed.  LoanMe shall recover its costs of appeal.

CERTIFIED FOR PUBLICATION

MENETREZ_____<br>J.


We concur:

MILLER_____<br>
Acting P. J.<br>
RAPHAEL_____<br>
J.

22