Filed 6/21/21  P. v. Jimenez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>IVAN JIMENEZ,<br><br>Defendant and Appellant. | D077974<br><br><br>(Super. Ct. No. SCD286196) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed in part; reversed in part, with instructions.

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Attorney General, Lance E. Winters, Julie L. Garland, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

In May 2020, defendant Ivan Jimenez was charged with making a criminal threat against his mother (Pen. Code,[1] § 422; count 1); and vandalism over $400 (§ 594, subd. (a)(b)(1); count 2). On June 4, 2020, a criminal protective order was filed against defendant, naming his mother as the protected person. Later that same month, defendant pleaded guilty to count 2. In exchange for the plea, the parties agreed (1) to dismiss count 1; and (2) defendant would be screened for behavioral health court, and if not accepted, the court would consider a treatment program rather than additional time in custody. Defendant also agreed to a *Harvey*[2] waiver. On August 11, 2020, defendant was found unsuitable for behavioral health court. On August 17, 2020, the court suspended imposition of sentence and granted defendant three years of formal probation.

On appeal, defendant contends that, to comply with the court's oral pronouncement at sentencing, the following must occur: (1) all the fines, fees, and assessments imposed in the August 18, 2020 order granting formal probation (August 18 Order) must be stayed; (2) probation condition 9(a) must be stricken; and (3) condition 14(a) amended. Defendant further contends (4) the court erred in imposing the "computer[]" and "recordable media" search conditions in condition 6(n) because they are not reasonably related to future criminality; and (5) the "recordable media" condition in any event is overbroad, or, in the alternative, is unconstitutionally vague.

The People agree the August 18 Order should comport with the court's oral pronouncement of judgment, and therefore should be modified to strike condition 2(k) imposing a $500 domestic violence fund fee (§ 1203.097); to

---

[1] All further statutory references are to the Penal Code.

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

2

include probation conditions 3(a)–(c); to strike probation condition 9(a); and to amend condition 14(a). Defendant in his reply agrees. In addition, the People claim a limited remand is necessary (1) to conduct an ability to pay hearing under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) to clarify if the court "stayed" all fines, fees, and assessments, or implicitly found defendant did not have the ability to pay them; and (2) to clarify if the court meant to include "computers" in search condition 6(n).

As we explain, we agree with the parties that the August 18 Order should be corrected to mirror the court's oral pronouncement of judgment. We also agree remand is necessary to clarify (1) whether the court found defendant did not have the ability to pay under *Dueñas*, or whether it stayed all fines, fees, and assessments, including those in which there ostensibly is no statutory right to a stay; and (2) whether the court sought to include "computers" in condition 6(n). We further conclude the "recordable media" condition was reasonably related to future criminality, as it is proportional to the minimal burden on defendant's privacy, and is not overbroad or unconstitutionally vague.

## OVERVIEW[3]

At about 9:30 p.m. on May 27, 2020, officers responded to a report of a man—later identified as defendant—kicking the front door of his mother's home and punching her parked car. The report noted defendant was upset after his mother, Elizabeth S., had locked him out of the home.

---

[3] Given defendant's guilty plea, this factual summary is primarily derived from his probation report.

Officers contacted and detained defendant outside his mother's home. Defendant appeared "visibly shaken," "upset," and was intermittently crying. His hands were bloodied. Elizabeth's two young daughters, defendant's step-sisters, were inside the home when the incident took place.

Elizabeth told officers defendant had stayed home from work that day. She suspected he had been drinking alcohol and smoking marijuana. At about 9:10 p.m., defendant became violent and pushed her onto the living room couch, after she confronted him about his alcohol use. He then began "dancing obscenely over her" and threatened to "kill" her if she called police. He next held his cell phone underneath her chin and stated, "I'm going to stab you," causing Elizabeth to fear for her life. During the interview, Elizabeth disclosed defendant also had threatened to stab her a week before the May 27 incident. In the previous incident, he specifically threatened to stab her "four times in the back and four times in the chest, neck and stomach," leading Elizabeth then to hide all the "sharp objects" in her home.

Just before the May 27 incident, defendant had verbally abused Elizabeth's nine-year-old daughter and had asked his mother for money, as he wanted to buy more beer. According to Elizabeth, he found some "change" in the home and left for the store. It was then that Elizabeth locked up the home. When defendant returned and found he could not reenter, he became "outraged." Elizabeth in response locked herself and her two daughters in the bathroom, then messaged her friend. Defendant began to pound on the bathroom window with such force Elizabeth believed it would break. Elizabeth's friend called the police.

4

Elizabeth showed officers the damage to her home and car caused by defendant. Damage to the home included a broken window, window screen, deadbolt, and a lower door hinge, after defendant attempted to access the home. He also damaged his mother's 2017 Honda, as he threw at least one potted plant at the car, which was covered in dirt, cracking the front windshield and scratching the paint on the hood and driver-side door. Damage to the home and car were estimated at $2,000.

On arrest, defendant said he was "sorry" for his behavior and would "take the L[oss])." He admitted breaking the window to the home but denied damaging the Honda or making any threatening statements. He told officers he was schizophrenic, he had not been taking his medication, and a week earlier he had been transported to County Mental Health for evaluation.

The probation report noted Elizabeth was not seeking restitution from her son. However, she disclosed she remained "very fearful" of defendant and wanted him to get help. She also disclosed Child Welfare Services had been notified of the incident because defendant had verbally abused her nine-year-old daughter. Elizabeth stated she wanted the criminal protective order to remain in place and to include her two daughters.[4]

The probation report summarized a July 15, 2020, telephone interview with defendant. He reported "mental health concerns" that began in childhood that "he never either accepted or addressed." He admitted alcohol was a problem, stating, "If I hadn't been drinking, it wouldn't have happened." He added, "I understand that I messed up and I feel remorseful and guilty. And in the long run I let my sisters down and they depend on

---

[4] The record shows the criminal protective order was terminated on August 17, 2020, because the August 18 Order included condition 10(j), which separately required defendant to avoid contact with Elizabeth and her two daughters.

me." Defendant stated he needed help, that in the past he had not been "open about things and never asked for help," and as time went on things "got worse" but now he wanted "to get better." The probation report shows defendant had no criminal history prior to this offense.

During the interview with probation defendant denied being schizophrenic. He nonetheless took medication for what he described as "shakiness"; although the medication helped him, defendant did not refill the prescription because he then was "in denial that anything was wrong with [him] mentally." He admitted being "dependent" on marijuana because it helped him sleep, and believed he would benefit from a substance abuse treatment program. The probation report noted Defendant then was earning about $500 a week from employment.

At sentencing, defense counsel objected to the "GPS" condition and to the "recordable media" and "electronic devices" search conditions in 6(n) that were recommended by probation. Defense counsel noted that defendant did not use any "electronic devices" in committing the instant offense; that he never "violated a criminal protective order that would justify the use of the cell phone being used to ensure that he doesn't contact his mother and [her] daughter[s]"; that this was his first criminal case; and that he also had a low COMPAS score.

The prosecutor argued the conditions recommended by probation were necessary to ensure that defendant did not contact his mother. The prosecutor noted the instant offense was not the first time defendant had threatened his mother, as there "was a history of this type of behavior, a history of schizophrenia. So, obviously, the mother isn't reporting every single time that that's happened, so he could be contacting his mother. And if

6

the mother isn't contacting law enforcement, then Probation would never know."

After hearing additional argument, the court made an oral pronouncement of judgment in part as follows: "All right. So I have read and considered the probation report. I'm going to place you on three years' formal felony probation under the supervision of the probation department. I'm going to order that you serve 240 days in custody . . .; pay a fine in the amount of $820; $40 court operations fee; $154 criminal justice administration fee; a $30 criminal conviction fee; a $41 theft fine; $300 fine, $300 restitution fine pursuant to . . . [s]ection[s] 1202.4 and 1202.44. [¶] Then I will *stay all those fines* pending successful competition of probation. And restitution—there's no restitution being sought at this time, so I'm not going to order any restitution to the victim, Elizabeth S[.] And if in the future restitution is determined by a court order, you're ordered to pay it at a rate of $35 per month. Any payments that are ordered for restitution will go to restitution first. [(Italics added.)]

"Also, [I am imposing] Condition Number 3(a), (b), and (c); Condition Number 4; Condition Number 5(c); Condition Number 6(a), (b), (e), (i), (j), (k) and (l); Condition Number 6(n), but I'm going to delete electronic devices from that. But you will still be subject to search any time, day or night, with or without a search warrant, with or without probable cause–your person, vehicle, and personal effects.[5] So you're still going to be subject to search, they're just not going to be able to search your cell phone."

---

5    As discussed *post*, the court did not include "computers" in listing the items subject to search.

The record shows defense counsel then sought clarification if the court was allowing searches of "recordable media," and whether "recordable media" included a cell phone. Defense counsel argued probation, as a "blanket matter, issues recordable media searches" that were unconstitutionally vague, and asked the court to strike this condition. The prosecutor noted "recordable media" referred to "social media," which "would not necessarily have to be accessed through [defendant's] own personal electronic device."

The court declined to strike the "recordable media" condition, stating it would "let the Court of Appeal decide what [the term] means." However, the court went on to note that, if the term meant probation could go on social media where "people are exchanging comments . . . and then find [defendant] and then be able use that, you know, to monitor him, then I think that's all right. They should be allowed to do that. [¶] Okay. . . . I'm going to include—I'm going to keep recordable media in the order, but I'm excluding electronic devices.

"And then [I am imposing] Condition Number 6(o), (r), and (s); 7(a) through (d); 8(b), (c), (e), and (f); 8(j); 9(c); 10(a), (b)—well, (a) through (d), and 10(g) and (j). . . . [¶] And I am going to order the global monitoring, the GPS system. So I'm going to impose 11(a) and (b); however, I'm going to delete the requirement that he reimburse probation for the GPS. [¶] And 12(d) and (f); and 14(a), (b), and (c). And then I'm going to delete the probation cost and the attorney's fees."

8

DISCUSSION

I

Correction of the August 18 Order

Defendant contends—and the People agree—there is a conflict between the oral pronouncement of judgment and the August 18 Order regarding certain conditions of probation. It is axiomatic that in such instances the record of the oral pronouncement of the court in a reporter's transcript controls. (See *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 858 [recognizing the rule that the "oral pronouncement of judgment controls over the minutes and abstract of judgment"].)

The parties thus agree the Order should be modified as follows: (1) to strike condition 2(k) imposing a $500 domestic violence fund fee (§ 1203.097); (2) to include probation conditions 3(a), (b), and (c); (3) to strike condition 9(a); and (4) to amend condition 14(a) to comport with the language in the order recommended by probation.[6]

The parties also agree that the court imposed a total of $1,685 in fines, fees, and assessments, and at sentencing stated *all* such fines, fees, and assessments were "stayed," as we have noted. However, the August 18 Order stays only the $820 fine in condition 2(a), which includes a "surcharge" and "penalty assessment" (§ 1465,7, subd. (a)), and not the balance of the other fines, fees, and assessments. Remand is therefore necessary to clarify the

---

[6] Condition 14(a) in the order recommended by probation required that defendant complete a family violence class/treatment as directed by probation. In contrast to the recommended order, condition 14(a) in the August 18 Order provided: "No marijuana use at all even with card/recommendation/prescription." The court at sentencing provided no explanation why it was not following the language in 14(a) of the recommended order, which the parties (and the court) had relied on.

basis for the court's decision to stay all fines, fees, and assessments, including, if the trial court deems it necessary, conducting an ability to pay hearing under *Dueñas* as to one or more of such fines, fees, and assessments.

## II

## Recordable Media

As noted, the court included in search condition 6(n) "recordable media" but excluded "electronic devices." Condition 6(n) in the August 18 Order thus provides: "[The defendant shall s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media . . . to search at any time with or without a warrant, and with or without reasonable cause, when required by P.O. or law enforcement officer."

As he did at the time of sentencing, on appeal defendant challenges the portion of condition 6(n) applicable to searches of "computers" and "recordable media." We note the waiver embodied in condition 6(n) does not apply to medical, legal, financial records, and any data before defendant's acceptance of probation. Defendant contends that even as so limited, condition 6(n) is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*) and *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*)

The People contend the "recordable media" portion of condition 6(n) was properly imposed, but state the matter nonetheless should be remanded to clarify whether the trial court intended to include "computers" in the search waiver. The People note that during sentencing, the court stated defendant could return if it appeared probation was defining "recordable media" to include his "laptop or his cell phone or his tablet," after stating condition 6(n) would not apply to "electronic devices." According to the People, it thus appeared the court was excluding "computers" (i.e., a laptop or tablet) from condition 6(n).

10

Our high court in *Ricardo P.* recently clarified that the reasonableness inquiry of *Lent's* third prong "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) When significant privacy interests are implicated by a probation condition, the burden imposed on a defendant is a heavy one; such a condition is unreasonable unless it is " 'proportional to achieving some legitimate end of probation.' " (*Id.* at p. 1127.) Reasonableness necessitates " 'more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality.' " (*Id.* at p. 1121.) "In other words, to justify a burdensome condition, there must be a specific relationship—grounded in the facts of the case—between the condition and preventing future criminality." (*People v. Cota* (2020) 45 Cal.App.5th 786, 790.)

Here, we find the facts justify the court's decision to impose the "recordable media" condition to prevent future criminality. Indeed, the record shows the court carefully considered whether to impose this portion of condition 6(n), after it struck the "electronic devices" condition. In so doing, the court found the "recordable media" condition applied to social media, as argued by the prosecution, allowing defendant's contacts and communications to be checked without using an electronic device, such as a "laptop," "tablet" or "cell phone."

The record further shows the incident leading to defendant's conviction was not isolated, and was serious. A week before the crime, defendant threatened to stab his mother. In connection with this prior incident, defendant was transported to County Mental Health for evaluation. According to the prosecutor, defendant also had a "history" of threatening his mother. Elizabeth, however, did not report these other incidents to law

11

enforcement, although she was scared enough of defendant to hide "sharp" objects a week before the May 27 incident, and on the night of the May 27 incident, feared for her life after defendant threatened to kill her and held his cellphone up to her neck while saying he wanted to stab her. And shortly before sentencing, Elizabeth told probation she was still scared of defendant and wanted a stay-away order to apply not only to her, but also to her daughters.

Moreover, although defendant denied he was schizophrenic, he admitted having significant mental health issues, needing help and treatment, and feeling as though he had let his mother and half-sisters down as a result of the incident, as they "depend[ed]" on him. Defendant told probation his mental health issues dated back years, and that in the past he had refused treatment, including medication.

Defendant also admitted alcohol use was a problem, and candidly told probation if he had not been drinking alcohol on the night of the incident, it allegedly would not have happened. The record shows the court imposed various alcohol conditions on defendant, including condition 8(b), not using or possessing alcohol if directed by the P.O.; and 8(c), attending self-help meetings if directed by the P.O.

We conclude the seriousness of the incident and the fact it was not isolated, Elizabeth's unwillingness to report prior incidents in which she feared defendant, his significant mental health issues that until recently he refused to acknowledge, and his alcohol (and marijuana use[7]) justify the court's imposition of the "recordable media" condition in 6(n) despite defendant's lack of prior criminal history. We note this condition is significantly less burdensome, and involves much less intrusion on

---

[7]     Defendant also admitted using marijuana daily.

defendant's privacy, than the "electronic devices" condition the court did not impose, particularly given the court's understanding that "recordable media" was akin to social media, which could be reviewed without using defendant's "electronic devices." We thus conclude this condition was reasonable under the facts of this case. (See *Ricardo P., supra*, 7 Cal.5th at p. 1127.)

Defendant also contends that the "recordable media" condition in 6(n) is overbroad. As we have noted, however, the court tailored this condition to exclude searches of medical and legal information, financial accounts or transactions, and any data created before defendant accepted the grant of probation. We thus conclude this condition is not overbroad. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 890; *People v. Patton* (2019) 41 Cal.App.5th 934, 946.)

Regarding vagueness, although initially unclear as to the meaning of "recordable media," the trial court ultimately interpreted the term to apply to social media, as opposed to a "laptop," "tablet," or "cell phone." (See *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038 ["It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage."].) Limiting recordable media as such, and noting defendant could come back to court if probation interpreted the condition too broadly, we conclude the "recordable media" condition in 6(n) is not unconstitutionally vague.

DISPOSITION

The matter is remanded for the court to (1) correct the August 18 Order so that it mirrors the oral pronouncement of judgment, as we have discussed; and (2) clarify (a) the basis for its staying all fines, fees, and assessments, including, if applicable, under *Dueñas*, and (b) whether it meant to include "computers" in search condition 6(n).  In all other respects, the judgment is affirmed.


BENKE, J.

WE CONCUR:



McCONNELL, P. J.



IRION, J.


14