Filed 8/7/14

# IN THE SUPREME COURT OF CALIFORNIA

TUOLUMNE JOBS & SMALL )
BUSINESS ALLIANCE, )
                         )
           Petitioner, )
                         )                S207173
          v. )
                         )        Ct.App. 5 F063849
THE SUPERIOR COURT OF )
TUOLUMNE COUNTY, )        Tuolumne County
                         )     Super. Ct. No. CV56309
          Respondent; )
                         )
WAL-MART STORES, INC., et al., )
                         )
      Real Parties in Interest. )
_____)

        When a city council receives a voter initiative petition meeting Elections Code requirements, it must do one of three things: (1) adopt the initiative without alteration; (2) submit it to a special election; or (3) order an abbreviated report on the initiative. Upon receipt of the report, it must then either adopt the initiative or hold a special election. (Elec. Code, § 9214.)[1] Several cases have held that provisions of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) do not apply to land use initiatives proposed by voters and adopted at an election. In such cases, the abbreviated report provided for in the Elections Code furnishes the exclusive means of obtaining environmental review.

_____

[1]      All statutory references are to the Elections Code unless otherwise specified.

(See, e.g., *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 793-795 (*DeVita*); *Stein v. City of Santa Monica* (1980) 110 Cal.App.3d 458, 461-462 (*Stein*).)

The question here is whether the result should be different if a city chooses to directly adopt a voter-sponsored initiative rather than hold a special election. The Court of Appeal distinguished between these two courses of action and held that a city may not adopt a voter initiative with potential environmental impacts unless it conducts a full CEQA analysis. The language and legislative history behind the Elections Code statutes do not support this interpretation. Accordingly, the judgment is reversed.

## I. BACKGROUND

The relevant facts are undisputed. Wal-Mart Stores, Inc. (Wal-Mart) operates a 130,166-square-foot store in the City of Sonora (City). In 2007, Wal-Mart sought to expand its store by approximately 27,491 square feet. The new Wal-Mart "Supercenter" would sell groceries and be open 24 hours every day. In December 2009, the City circulated for public comment a draft environmental impact report (EIR) for the expansion. After a hearing, the City's planning commission unanimously recommended that the EIR be certified and the project approved.

Less than a week later, before the project was called for a vote, the City Council (Council) was served with a notice of intent to circulate an initiative petition. The "Wal-Mart Initiative" proposed to adopt a specific plan for the contemplated expansion. Its apparent purpose was to streamline approval for construction and operation of the Supercenter. The Council postponed its vote while the initiative petition circulated. The petition was ultimately signed by over 20 percent of the City's 2,489 registered voters.

On September 20, 2010, the Council ordered that a section 9212 report be prepared to examine the initiative's consistency with previous planning commission approvals for the Wal-Mart expansion. At its next meeting, the

2

Council considered this report and countervailing arguments. After weighing its options, the Council adopted the ordinance.

The Tuolumne Jobs & Small Business Alliance (TJSBA) then sought a writ of mandate based on four causes of action. The petition's first claim, which is the subject of this appeal, asserted that the Council violated CEQA by adopting the ordinance without first conducting a complete environmental review. TJSBA also challenged the validity of the initiative itself, on the grounds that it conflicted with the City's general plan, improperly limited the City's legislative power, and was impermissibly administrative, rather than legislative, in nature.

Wal-Mart, the City, and initiative proponent James Grinnell demurred. The trial court sustained the demurrer without leave to amend as to all causes of action except TJSBA's claim that the initiative improperly conflicted with the general plan. TJSBA challenged these adverse rulings by writ petition in the Court of Appeal. That court granted the writ as to the first cause of action, holding that when a land use ordinance is proposed in a voter initiative petition, full CEQA review is required if the city council adopts the ordinance rather than submitting it to an election. It expressly disagreed with the only published authority on point, *Native American Sacred Site & Environmental Protection Assn. v. City of San Juan Capistrano* (2004) 120 Cal.App.4th 961. We granted review.

## II. DISCUSSION

This case explores the intersection between the constitutional power of voters to enact laws by initiative and the environmental review generally required for laws potentially having a significant environmental impact. Because we must decide a city government's obligations in adopting a land use initiative proposed by voters,[2] we begin our analysis with the laws governing initiatives.

---

[2] TJSBA urges us to follow our decision in *Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 191, which held that local agencies must comply with CEQA before placing a land use initiative on the ballot. However, *Sierra Madre*'s holding was specifically addressed to *city-council-generated*

3

A.      *Elections Code Provides the Exclusive Procedures for Voter Initiatives.*

In 1911, Californians amended our Constitution, reserving to themselves the powers of initiative and referendum.  (Cal. Const., art. IV, § 1; *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 (*Associated Home Builders*).)[3]  Voter initiatives have been compared to a " '*legislative battering ram*' " because they " 'may be used to tear through the exasperating tangle of the traditional legislative procedure and strike directly toward the desired end.' "  (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 228.)  In light of the initiative power's significance in our democracy, courts have a duty " 'to jealously guard this right of the people' " and must preserve the use of an initiative if doubts can be reasonably resolved in its favor.  (*Associated Home Builders*, at p. 591; see *Amador Valley*, at p. 248.)

The Legislature was authorized to establish procedures for city and county voters to exercise their right of initiative.  (Cal. Const., art. II, § 11; *Associated Home Builders*, *supra*, 18 Cal.3d at p. 591.)  It has done so.  In contrast to statewide initiatives, which may be placed directly on the ballot, the Legislature created an indirect process for city and county initiatives.  These can only be submitted to voters if they have been presented to, but not enacted by, the local legislative body.  (*Thompson v. Board of Supervisors* (1986) 180 Cal.App.3d 555,

initiatives.  "There is . . . a clear distinction between voter-sponsored and city-council-generated initiatives."  (*Id*. at p. 189.)  Whereas voters may justifiably assume that a city council has placed an initiative on the ballot only after careful study of its potential environmental impacts, they have no reason to believe a voter-sponsored initiative has undergone the same scrutiny.  (*Id*. at p. 190.)  Voters can therefore be expected to consider the potential environmental impacts of a proposal more carefully in deciding whether to support or oppose a voter-sponsored measure.  (*Ibid*.)  The *Sierra Madre* opinion is thus inapposite here.

[3]      Because this case concerns a voter initiative, we do not discuss the voters' related power of referendum except to note its availability as a means to repeal initiatives that have been adopted against the majority's wishes.  (See *post*, at p. 14.)

4

561.) "The intent of the Legislature in granting solely indirect initiative power to voters at the county level was to create the opportunity to spare the expense of a public vote. [Citation.]" (*Ibid.*, fn. omitted.)

The procedures for municipal voter initiatives are found in section 9200 et seq.[4] Under section 9214,[5] when a local body receives an initiative petition signed by at least 15 percent of the city's registered voters, it must: (1) adopt the initiative, without alteration, within 10 days after the petition is presented; (2) immediately submit the initiative to a vote at a special election; or (3) order a report pursuant to section 9212. The report may examine the proposed initiative's effects on land use, infrastructure, and "[a]ny other matters the legislative body requests" be included. (§ 9212, subd. (a)(8).) If ordered, the report must be prepared and presented within 30 days after the petition was certified as satisfying the signature requirement. (§ 9212, subd. (b).) Within 10 days after receiving the report, the legislative body must either adopt the ordinance or order an election pursuant to section 9214(b). (§ 9214(c).)

It is well established that CEQA compliance is not required before a legislative body submits an initiative *to voters* under section 9214(b). (See *DeVita*, *supra*, 9 Cal.4th at pp. 793-795; *Stein*, *supra*, 110 Cal.App.3d at p. 461.) The question here is whether the result should be different in the direct adoption context. That is, must the legislative body obtain full CEQA review before it may directly adopt a voter initiative under section 9214(a)? The answer is no. Because CEQA review is contrary to the statutory language and legislative history pertaining to voter initiatives, and because policy considerations do not compel a different result, such review is not required before adoption of a voter initiative. A

---

[4] Other chapters of the Elections Code govern statewide initiatives (§ 9000 et seq.) and county initiatives (§ 9100 et seq.).

[5] Hereafter, references to the subdivisions of this statute will be abbreviated as sections 9214(a), 9214(b), and 9214(c).

section 9212 report is the exclusive means for assessing the potential environmental impact of such initiatives.

B.     *Statutory Language Precludes Application of CEQA.*

Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. (*In re Greg F.* (2012) 55 Cal.4th 393, 406 (*Greg F.*).)  We consider first the words of a statute, as the most reliable indicator of legislative intent. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529.)  " ' "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." [Citation.]  Interpretations that lead to absurd results or render words surplusage are to be avoided.  [Citation.]' [Citation.]" (*People v. Loeun* (1997) 17 Cal.4th 1, 9.)

The language of section 9214 makes no mention of CEQA.  Although this fact alone is not dispositive, the statutory language does not support imposing a CEQA requirement on the direct adoption procedures in section 9214(a).

Requiring CEQA review before direct adoption would essentially nullify both subdivisions (a) and (c).  The plain language of section 9214 requires that city governments act quickly to either adopt a qualified voter initiative or hold a special election. (§ 9214(a)-(b).)  The only other option is to order a report exploring potential impacts of the initiative. (§ 9214(c); see § 9212.)  This report can only provide an abbreviated review because it must be produced within 30 days after the initiative's certification. (§ 9212(b).)  Once the city receives the report, it must either adopt the initiative within 10 days or immediately order a special election. (§ 9214(c).)  These short deadlines are consistent with other deadlines requiring public officials to act expeditiously on initiatives.  For example, once a proposed initiative is filed, the city attorney has only 15 days to prepare a ballot title and summary (§ 9203), and elections officials have only 30 days to verify signatures on the petition (§§ 9114-9115, 9211).

6

In contrast to these condensed deadlines, CEQA review typically takes months. The process starts with a preliminary review, in which the lead agency has 30 days to determine whether the proposed activity constitutes a "[p]roject" subject to CEQA. (Pub. Res. Code, § 21065; Cal. Code Regs., tit. 14, § 15060.) If the activity is a project, and not exempt from CEQA, the lead agency must next conduct an initial study to determine whether the activity may have a significant effect on the environment. (Cal. Code Regs. tit. 14, § 15063.) Depending on the extent and significance of potential environmental impacts identified in the initial study, the agency must prepare either an EIR, a mitigated negative declaration, or a negative declaration. (Pub. Res. Code, §§ 21064, 21064.5, 21080, subds. (c), (d); Cal. Code Regs., tit. 14, § 15063.) Even if the lead agency determines a project is unlikely to have a significant environmental effect, CEQA requires public notice and a minimum of 20 to 30 days for public comment before a negative declaration can be adopted. (Pub. Res. Code, § 21091, subd. (b).) If an EIR is required, the lead agency must notify all responsible agencies and the state Office of Planning and Research. These agencies then have 30 days to specify the scope and content of information to be included. (Pub. Res. Code, § 21080.4; Cal. Code Regs., tit. 14, § 15082.) With this input, the lead agency prepares a draft EIR (Pub. Res. Code, § 21100) and circulates it for public review and comment (Pub. Res. Code, § 21091; Cal. Code Regs., tit. 14, § 15087). The time required to prepare a full EIR varies. The public review period must be at least 30 days. (Pub. Res. Code, § 21091, subd. (a).) The lead agency must then prepare written responses to the public comments and incorporate the comments and responses into a final EIR. (Pub. Res. Code, §§ 21091, subd. (d)(2), 21104, 21153; Cal. Code Regs., tit. 14, § 15088.) If significant information is added, the EIR must be *recirculated* for another round of public review and comment before issuance of a final EIR. (Cal. Code Regs., tit. 14, §§ 15088.5, 15090.)

Considering the time necessary for agencies to review the potential environmental impacts of a project and allow public review and comment, it

7

would be impossible for a city to complete CEQA review within 10 days before adopting a voter initiative. (§ 9214(a).) Although this period can be extended to 40 days if the city obtains a section 9212 report, under no circumstances can a city delay action on a voter initiative beyond 40 days. The deadlines in section 9214 are mandatory. As a result, if prior CEQA review is required, a city could *never* adopt a voter initiative under section 9214(a) if that initiative had any potential impact on the environment. Direct adoption would be severely curtailed and, for many initiatives, no longer an option, because it would be impossible for cities to comply with both CEQA and the section 9214 deadlines. (Cf. *DeVita*, *supra*, 9 Cal.4th at p. 795 [irreconcilable deadlines make it impossible to conduct CEQA review before holding election on a voter initiative].)

Requiring CEQA compliance before direct adoption would thus effectively nullify section 9214(a) for all voter initiatives with potential environmental impact. It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634; see *People v. Shabazz* (2006) 38 Cal.4th 55, 67-69.) "An interpretation that renders statutory language a nullity is obviously to be avoided." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357.) Adding CEQA review to the procedures in section 9214(a) would render that provision inoperative for a great many voter initiatives. The impact also spreads beyond subdivision (a). If full CEQA review were required before an initiative could be adopted, the abbreviated report provided for by sections 9212 and 9214(c) would be superfluous. Cities could still obtain such a report, of course. But, despite the plain language of section 9214(c) allowing direct adoption, cities' only practical option after obtaining a report would be to submit the initiative to an election. Moreover, if a city undertook full CEQA review of a voter initiative, the more cursory review available under section 9212 would be duplicative and unnecessary.

"The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute. [Citations.]" (*Greg F.*, *supra*, 55 Cal.4th at p. 407.) When the Legislature enacted CEQA in 1970, the statutory procedures for enacting voter initiatives were firmly in place, having been codified at section 9214(a) for nearly 60 years. If the Legislature had intended to require CEQA review before direct adoption, despite the section 9214(a) deadlines, it could have easily said so. It did not.

Moreover, although CEQA is the later enacted and arguably more specific statute, a conclusion that CEQA prevails over contrary Elections Code procedures would impliedly repeal section 9214(a). There is a strong presumption against repeal by implication. (*People v. Park* (2013) 56 Cal.4th 782, 798.) " 'Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " [Citation.]' [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 487.) "Courts have also noted that implied repeal should not be found unless '. . . the later provision gives *undebatable evidence* of an intent to supersede the earlier . . . .' [Citation.]" (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 420.) Evidence that the Legislature intended CEQA to supersede direct adoption procedures is completely lacking. The legislative scheme accommodates the concerns underlying CEQA by providing abbreviated review under sections 9212 and 9214(c). (See *post*, at pp. 11-12.) Moreover, because the timelines for initiatives and CEQA review are fundamentally incompatible, a requirement of CEQA review before direct adoption would leave local governments no choice but to submit most initiatives to election. Then, no additional environmental review would result.

Finally, even if time constraints permitted CEQA review, cities would be powerless to reject the proposed project or to require alterations in the project that

would lessen its environmental impact, no matter what the review showed. Section 9214 requires that local governments either adopt qualified initiatives or submit them to voters "without alteration." (§ 9214.) Furthermore, initiatives adopted by a local government or voters may not be repealed or amended except by vote of the people, unless the initiative provides otherwise. (§ 9217.)

C.    *Application of CEQA to Voter Initiatives Is Contrary to Legislative Intent.*

To the extent statutory language is ambiguous or open to more than one reasonable interpretation, we may turn to legislative history for guidance. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1105.) Here, legislative history confirms that ordinances enacted by initiative, either directly or by election, are not subject to CEQA review.

*DeVita*, *supra*, 9 Cal.4th at pages 794-795, discussed two Assembly bills that would have subjected initiative measures to environmental review. One would have required environmental review after the approval of any initiative that proposed activity constituting a project under CEQA. The initiative could then take effect only upon filing of an EIR or other CEQA document. (See *DeVita*, at p. 794 [discussing Assem. Bill No. 4678 (1987-1988 Reg. Sess.), as introduced Mar. 1, 1988].) Another bill would have required an extensive environmental review and economic analysis by the Governor's Office of Planning and Research before any local land use initiative could be submitted to voters. (See *DeVita*, at p. 794 [discussing Assem. Bill No. 628 (1989-1990 Reg. Sess.)].) Neither bill was enacted. (*DeVita*, at pp. 794-795.)

Although proposed legislation may fail for many reasons, and only limited inferences can be drawn when a bill fails (see *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 746), we found this legislative history telling. The repeated "defeat of attempts to impose more stringent environmental review requirements on land use initiatives provide[d] . . . corroboration that the Legislature did not intend such requirements to obstruct the exercise of the right to amend general plans by initiative." (*DeVita*, *supra*, 9 Cal.4th at p. 795.) Instead, we concluded

10

the environmental review available under section 9111, the companion statute of section 9212,**6** represents the Legislature's attempt to balance the right of initiative with the goal of informing voters and local officials about the potential consequences of an initiative's enactment. (*DeVita*, at p. 795.) This compromise allows local agencies to conduct an abbreviated environmental review and still act promptly on the initiative. (See *ibid*.)

The Legislature's treatment of two other Assembly bills directly supports the conclusion in *DeVita* that local initiatives are subject to environmental review under sections 9111 or 9212 but *not* CEQA. Assembly Bill No. 2003 (1987-1988 Reg. Sess.) (hereafter Assembly Bill 2003) and Assembly Bill No. 2202 (1987-1988 Reg. Sess.) (hereafter Assembly Bill 2202) concerned the same subject and were introduced on the same day, March 6, 1987. Their different outcomes are instructive about the breadth of environmental review the Legislature intends for initiatives.

As originally written, Assembly Bill 2003 would have prevented a city or county clerk from "examin[ing]" a land use initiative petition unless it was accompanied by an EIR or negative declaration. (Assembly Bill 2003, as introduced Mar. 6, 1987, p. 2.) Later amendments required that local agencies conduct CEQA review and produce an EIR or negative declaration within 210 days. (Assembly Bill 2003, as amended May 4, 1987, p. 5.) Only after this review could a local government adopt the initiative or submit it to an election. (*Ibid*.) The Assembly Natural Resources Committee opposed the bill because it would have imposed time-consuming and costly procedural requirements on land use initiatives and potentially inhibited the initiative power. It would also have

---

**6** Section 9111 is identical to section 9212 except that it applies to initiatives at the county, rather than city, level. Just like section 9214, section 9116 requires that county boards of supervisors either adopt a qualified initiative, put it before voters at a special election, or order an abbreviated report followed by direct adoption or election. They are parallel statutory schemes addressing how initiatives must be handled at these different levels of government.

expanded CEQA's application to encompass measures proposed by citizens. (Assem. Natural Resources Com., Analysis of Assembly Bill 2003, as amended Jan. 1, 1988, p. 3.) The priority treatment of initiatives contemplated in the bill would also have interfered with ongoing local planning. Its timelines for environmental review would have been difficult to satisfy, leading to potential litigation over the review's adequacy along with further delay and expense. (*Ibid*.) After this opposition was registered, Assembly Bill 2003 died in committee.

Assembly Bill 2202, by contrast, passed handily. Among other things, Assembly Bill 2202 enacted the predecessor to section 9212. (Former Elec. Code, § 4009.5, added by Stats. 1987, ch. 767, § 15, p. 2438 and repealed by Stats. 1994, ch. 920 [repealing and reenacting Elections Code].) This provision authorized local governments to obtain a report on a proposed initiative measure's fiscal impact, effect on planning, and "[a]ny other matters" of interest. (Former Elec. Code, § 4009.5, subd. (a).) The report had to be prepared and presented within 45 days after initiative certification. (*Id*., subd. (b).) Legislative committee reports consistently observed that current law did not provide for *any* review of proposed initiatives by local agencies. (E.g., Sen. Elections Com., Rep. on Assembly Bill 2202, as amended June 30, 1987, p. 1; Assem. Com. on Elections, Reapportionment and Const. Amends., Rep. on Assembly Bill 2202, as amended May 4, 1987, p. 1.) One committee report noted that Assembly Bill 2202 would allow cities and counties to obtain information on an initiative's potential effects while they still had time to enact the initiative themselves. (Assem. Ways and Means Com., Rep. on Assembly Bill 2202, as amended May 14, 1987, p. 2.)

Thus, when faced with competing bills, the Legislature enacted the bill that gave local governments the option of obtaining an *abbreviated* review to be completed within the short time frame required for action on initiatives. This option is now codified for municipal initiatives in sections 9212 and 9214(c). As it had done with other similar attempts, the Legislature specifically *rejected* the bill that would have required CEQA review before a land use initiative could be

12

directly adopted or submitted to voters. For over 25 years, the Legislature has enacted no law extending CEQA to initiatives. This legislative history supports the conclusion that CEQA does not apply to *any* ordinances enacted by initiative, whether through an election or direct adoption.

D.      *Direct Adoption Without CEQA Review Does Not Offend Public Policy.*

Finally, if statutory language and legislative history are unclear, courts may look to public policy as an aid in determining legislative intent. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) Direct adoption of a voter initiative without prior CEQA review does not so offend public policy that we must reconsider our analysis.

Ever since the initiative power was added to the Constitution, the Legislature has given local governments the option to directly adopt voter initiatives rather than hold an election. The original implementing statute stated that, when presented with a qualified voter initiative, "the legislative body shall either: [¶] (a) [p]ass such ordinance without alteration at the regular session at which it is presented and within ten days after it is presented; or [¶] (b) [f]orthwith, . . . call a special election at which such ordinance, without alteration, shall be submitted to a vote of the electors of the city or town." (Stats. 1911, Ex. Sess. 1911, ch. 33, § 1, p. 132.) The government's option to adopt an initiative without holding an election was also provided for in the original ballot measure adding the right of initiative to the Constitution. The ballot material for the 1911 election explained that, after the Secretary of State transmitted a qualified initiative petition to the Legislature, "[t]he law proposed by such petition shall be either enacted or rejected without change or amendment by the legislature, within forty days from the time it is received," subject to referendum if the law was enacted. (Ballot Pamp., Special Elec. (Oct. 10, 1911) text of Sen. Const. Amend. No. 22, p. 2.) "If any law so petitioned for be rejected, or if no action is taken upon it by the legislature within said forty days, the secretary of state shall submit it to the people for approval or rejection at the next ensuing general election." (*Ibid.*)

13

Direct adoption has thus been available to local governments from the outset of legislation by initiative.  The voters who amended the Constitution intended to empower their government to enact a qualified initiative immediately, without the need for an election and its attendant delay and cost.  The Legislature has consistently provided that option in statutes implementing the amendment.

CEQA review is not required before direct adoption of an initiative, just as it is not required before voters adopt an initiative at an election.  Appellants warn that developers could potentially use the initiative process to evade CEQA review, and that direct adoption by a friendly city council could be pursued as a way to avoid even the need for an election.  Of course, the initiative power may also be used to *thwart* development.  (See, e.g., *Associated Home Builders*, *supra*, 18 Cal.3d at pp. 589-590 [initiative prohibited issuance of residential building permits until certain standards were met].)  However, these concerns are appropriately addressed to the Legislature.  The process itself is neutral.  The possibility that interested parties may attempt to use initiatives to advance their own aims is part of the democratic process.

Finally, voters have statutory remedies if direct adoption of an initiative results in the enactment of an undesirable law.  Section 9235 stays the effective date of most local ordinances for 30 days.  During this 30-day period, voters may circulate a referendum petition.  (See § 9237.)  If a city receives a "petition protesting the adoption of an ordinance" signed by at least 10 percent of the city's voters, the effective date is suspended and the city must reconsider the ordinance.  (*Ibid*.)  Upon reconsideration, the city may either repeal the ordinance in its entirety or submit the ordinance to voters in an election to be held within 88 days.  (§ 9241.)  The Legislature has outlined clear procedures for voters to overturn an ordinance adopted against the majority's will.  Whichever path a city chooses in dealing with a voter initiative, voters have the final say.

14

## III. DISPOSITION

The judgment of the Court of Appeal issuing a writ of mandate is reversed. The case is remanded for further proceedings consistent with this opinion.

**CORRIGAN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**BLEASE, J.** *

---

\*      Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Tuolumne Jobs & Small Business Alliance v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 210 Cal.App.4th 1006
**Rehearing Granted**

_____

**Opinion No.** S207173
**Date Filed:** August 7, 2014

_____

**Court:** Superior
**County:** Tuolumne
**Judge:** James A. Boscoe

_____

**Counsel:**

Herum Crabtree, Brett S. Jolley; Dongell Lawrence Finney and John A. Lawrence for Petitioner.

Briggs Law Corporation, Cory J. Briggs and Mekaela M. Gladden for CREED-21 as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Howard Jarvis Taxpayers Foundation as Amicus Curiae on behalf of Respondent and Real Parties in Interest.

K&L Gates, Edward P. Sangster, Megan Cesare-Eastman, Daniel W. Fox for Real Party in Interest Wal-Mart Stores, Inc.

Roger A. Brown; Rutan & Tucker, John A. Ramirez, Robert S. Bower and Peter J. Howell for Real Party in Interest James Grinnell.

Richard Matranga, City Attorney, for Real Party in Interest City of Sonora.

Renne Sloan Holtzman Sakai, Randy Riddle and Ivan Delventhal for League of California Cities as Amicus Curiae in behalf of Real Party in Interest City of Sonora.

Benbrook Law Group, Bradley A. Benbrook and Stephen M. Duvernay for Citizens in Charge as Amicus Curiae in behalf of Real Parties in Interest.

M. Reed Hopper and Anthony L. Francois for Pacific Legal Foundation as Amicus Curiae in behalf of Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John A. Lawrence
Dongell Lawrence Finney
707 Wilshire Boulevard, 45th Floor
Los Angeles, CA  90017
(213) 943-6100

Edward P. Sangster
K&L Gates
Four Embarcadero Center, Suite 1200
San Francisco, CA  94111
(415) 882-8200

John A. Ramirez
Rutan & Tucker
611 Anton Boulevard, Suite 1400
Costa Mesa, CA  92626-1931
(714) 641-5100