TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  | : |  |
|---|---|---|
| OPINION | : | No. 18-603 |
|  | : |  |
| of | : | January 21, 2022 |
|  | : |  |
| ROB BONTA | : |  |
| Attorney General | : |  |
|  | : |  |
| ANYA M. BINSACCA | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____

THE HONORABLE TONY THURMOND, State Superintendent of Public Instruction, has requested an opinion on questions regarding a county superintendent's authority over a school district in fiscal distress.

## QUESTIONS PRESENTED AND CONCLUSIONS

1. Does Education Code section 42127.6 allow a county superintendent of schools to stay the issuance of bonds by a school district in fiscal distress?

Yes. If the county superintendent provides notice and justification that a bond issuance would be inconsistent with the ability of a school district in fiscal distress to meet its financial obligations for the current or subsequent fiscal year, Education Code section 42127.6 authorizes the county superintendent to stay the bond issuance.

1

2.  May such a stay remain in place pending resolution of an investigation or outstanding audit deficiencies?

Yes.  A county superintendent generally may stay any action, including a bond issuance, up to the point that the superintendent approves the district's budget for the subsequent fiscal year, so long as the superintendent determines that the action would be inconsistent with the ability of the school district to meet its financial obligations for the current or subsequent fiscal year.

## BACKGROUND

The state Constitution creates a structure for governance of public education consisting of a state superintendent of public instruction,[1] county superintendents of schools,[2] and school districts.[3]  Here we are concerned with the powers of a county superintendent, whose general duties are set forth in the Education Code, and include the broad directives to "superintend the schools of his or her county,"[4] and to "maintain responsibility for the fiscal oversight of each school district in his or her county pursuant to the authority granted by this code."[5]  County superintendents provide support and guidance for the operations of individual schools or local districts, but are not typically involved in day-to-day operations. [6]  "Policy determinations regarding school districts are made by the [district] superintendent and the local school boards."[7]

We are asked about the scope of a county superintendent's power with respect to school districts showing evidence of fiscal distress.  Specifically, if a superintendent "determines that a school district will be unable to meet its financial obligations for the current or subsequent fiscal year," the superintendent is given certain powers to facilitate the directive to take "all actions that are necessary to ensure that the school district meets

---

[1] Cal. Const., art. IX, § 2.

[2] Cal. Const., art. IX, § 3.

[3] Cal. Const., art. IX, § 14.

[4] Ed. Code, § 1240, subd. (a).  Future undesignated statutory references are to the Education Code.

[5] Ed. Code, § 1240, subd. (b).

[6] Cal. County Superintendents Educational Services Assn., Statutory Functions of County Boards of Education & County Superintendents of Schools (Aug. 4, 2014), p. 4, <https://www.scoe.org/files/statutory-functions.pdf>.

[7] *Ibid*.

2

its financial obligations . . . ."[8]  Among these powers is the ability to stay or rescind any action inconsistent with the ability of the district to meet its obligations for the current or subsequent fiscal year.[9]

The question here asks about application of this stay-and-rescind authority to a school district's issuance of bonds.  The Education Code authorizes school districts to issue bonds.[10]  Bonds are "a type of long-term borrowing" that enables a government entity to raise money.[11]  School districts sell bonds to investors with an agreement to repay the money, with interest, on a particular schedule.[12]  The district is thus able to fund a large project that will provide value over many years, and to spread the repayment, often provided by taxpayers, over time.[13]  The question here asks about bond "issuance," which refers to "the process of authorizing, selling and delivering by the issuer of a new issue of municipal securities," of which bonds are one type.[14]

## ANALYSIS

### Does Education Code Section 42127.6 Allow a County Superintendent of Schools to Stay the Issuance of Bonds by a School District in Fiscal Distress?

The first question presented is whether the stay-and-rescind authority in Education Code section 42127.6, subdivision (e)(2) allows a county superintendent to prevent a school district found unable to meet its fiscal obligations for the current or subsequent

---

[8] Ed. Code, § 42127.6, subd. (e).  This provision also applies if the school district board certifies that the district is unable to meet its financial obligations for the remainder of the current fiscal year or the subsequent fiscal year.  (Ed. Code, § 42131, subd. (a)(1).)

[9] Ed. Code, § 42127.6, subd. (e)(2).

[10] See generally Ed. Code, tit. 1, div. 1, ch. 10 (School Bonds).

[11] Legislative Analyst's Office, Ballot Pages, Bonds, <https://lao.ca.gov/ballotanalysis/bonds> (as of Jan. 19, 2022).

[12] *Ibid*.

[13] *Ibid*.

[14] Municipal Securities Rulemaking Board Glossary, "issuance," available at <https://www.msrb.org/Glossary/Definition/ISSUANCE.aspx>, "municipal securities," available at <https://www.msrb.org/Glossary/Definition/MUNICIPAL-SECURITIES.aspx>.

3

fiscal year from issuing bonds. This subdivision gives the county superintendent the authority to:

> Stay or rescind any action that is determined to be inconsistent with the ability of the school district to meet its obligations for the current or subsequent fiscal year. This includes any actions up to the point that the subsequent year's budget is approved by the county superintendent of schools. The county superintendent of schools shall inform the governing board of the school district in writing of the county superintendent's justification for any exercise of authority under this paragraph.[15]

We first look to the statute's language to determine whether the Legislature intended to include a bond issuance within the actions the county superintendent may stay.[16] We initially observe that there is nothing in the statutory language to indicate that bonds are excluded from its ambit. Rather, the stay-and-rescind provision is worded broadly, allowing the county superintendent to stop *any action* determined inconsistent with the district's ability to meet its financial obligations.[17] The statute requires the county superintendent to justify a stay or rescission in writing to the school board.[18] But so long as the county superintendent can articulate that a bond issuance is "inconsistent" with a school district's ability to meet its financial obligations for the current or following year, nothing in the stay-and-rescind provision prevents the county superintendent from staying a bond issuance.

In addition, the statute exempts certain items—but not bonds—from the county superintendent's stay-and-rescind power. The statute "does not authorize the county superintendent of schools to abrogate any provision of a collective bargaining agreement

---

[15] Ed. Code, § 42127.6, subd. (e)(2).

[16] *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.

[17] Ed. Code, § 42127.6, subd. (e)(2).

[18] *Ibid*. This justification requirement is reinforced by section 42127.6(f), which dictates that any time a county superintendent imposes a budget revision or exercises the stay-and-rescind authority, the action "shall be accompanied by a notification that shall include the actions to be taken, the reasons for the actions, and the assumptions used to support the necessity for these actions." Additionally, the State Superintendent of Public Instruction monitors the efforts of the county superintendent, and can assume the county superintendent's authority if they are not effective in resolving the district's financial problems. (Ed. Code, § 42127.6, subd. (k).)

that was entered into by a school district before the date that the county superintendent of schools assumed authority pursuant to subdivision (e)."[19] That the Legislature carved out an exception for provisions of collective bargaining agreements, but did not do so for bonds, is strong evidence that the Legislature intended the superintendent's stay-and-rescind powers to extend to bonds.[20]

Taking a wider view of the statutory scheme, we observe that in designing the powers and responsibilities of county superintendents with respect to fiscally distressed school districts, the Legislature created "a complex progression of investigation, findings, notification, appellate review, further findings and further appellate review before the county superintendent of schools may exercise fiscal emergency powers."[21] The county superintendent, when first presented with evidence of fiscal distress, investigates the district's financial condition, and assesses whether the district will be able to meet its financial obligations for the current and two subsequent fiscal years.[22] If the county superintendent "determines that a school district may be unable to meet its financial obligations for the current or two subsequent fiscal years," the superintendent must propose remedial actions, and take "all actions that are necessary to ensure that the school district meets its financial obligations."[23] The possible remedial actions include assigning a fiscal expert to advise the district, conducting studies of the district's financial and budgetary conditions, requiring the district to encumber financial obligations, having the district submit proposals for addressing the causes of the fiscal distress, withholding compensation for the district board or district superintendent, and assigning a Fiscal Crisis and Management Assistance Team to review teacher hiring, retention, and assignment.[24]

If, after taking those actions, the county superintendent "determines that a school district will be unable to meet its financial obligations for the current or subsequent fiscal year," the superintendent must take "all actions that are necessary to ensure that the school district meets its financial obligations . . . ," including at least one of the actions

---

[19] Ed. Code, § 42127.6, subd. (g).

[20] *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 ("if exemptions are specified in a statute, [the court] may not imply additional exemptions unless there is a clear legislative intent to the contrary").

[21] *Polster v. Sacramento County Office of Education* (2009) 180 Cal.App.4th 649, 665.

[22] Ed. Code, § 42127.6, subd. (a)(1).

[23] *Ibid*.

[24] Ed. Code, § 42127.6, subds. (a)(1)(A)-(G).

5

enumerated in section 42127.6, subdivision (e).[25]  The enumerated actions at this stage include imposing a budget revision on the school district, assisting in developing a financial plan or a budget, appointing a financial advisor to perform these actions, and the power we are asked about here, the stay-and-rescind authority.[26]

Thus, the stay-and-rescind authority comes into play only in the most severe cases of fiscal distress, where a school district will be unable to meet its financial obligations for the current or subsequent year.[27]  Given the precarity of a school district's financial position at this stage, the Legislature saw fit to give county superintendents the ability to stay any action inconsistent with the district's ability to meet its financial obligations. This legislative purpose is best honored by concluding that a county superintendent who determines that a bond issuance is inconsistent with a school district's ability to meet its financial obligations may prevent that bond issuance using the stay-and-rescind authority.

In sum, if the county superintendent provides the required notice and justification showing that a bond issuance is inconsistent with a school district's ability to meet its financial obligations for the current or following year, the county superintendent may stay the bond issuance.

**May Such a Stay Remain in Place Pending Resolution of an Investigation Related to the Fiscal Distress or Outstanding Audit Deficiencies?**

Because we conclude that a county superintendent may stay a school district's issuance of bonds when the issuance would be inconsistent with the district's ability to meet its financial obligations, we consider the second question presented:  whether that stay may remain in place pending resolution of certain events.  Specifically, we have been asked whether a stay may remain in place pending the resolution of a district attorney's investigation, a Securities and Exchange Commission investigation, or the district's satisfaction of action items identified in an audit by a county office of education.

We begin by reiterating that the stay-and-rescind power vests broad discretion in the county superintendent to "[s]tay or rescind any action that is determined to be inconsistent with the ability of the school district to meet its obligations for the current or subsequent fiscal year."[28]  The statute does not speak to particular events justifying the

---

[25] Ed. Code, § 42127.6, subd. (e).

[26] Ed. Code, § 42127.6, subds. (e)(1)-(5).

[27] Ed. Code, § 42127.6, subd. (e).

[28] Ed. Code, § 42127.6, subd. (e)(2).

6

maintenance or requiring the termination of a stay.  Rather, it speaks to the county superintendent's basis for imposing the stay; so long as the county superintendent articulates that the stayed action is incompatible with the district meeting its financial obligations in the current or subsequent fiscal year, the stay is valid.

We cannot say in the abstract that a particular type of investigation would categorically justify the county superintendent staying any particular school district action, nor can we say that an investigation's conclusion would so change the circumstances that a stay would no longer be justified.  Similarly, we cannot say that a district's need to satisfy action items from an audit categorically justifies a stay, nor that the satisfaction of those action items would necessarily mean that a stay was no longer justified.  Whatever the circumstances, the relevant inquiry is whether the county superintendent determines that a school district action is inconsistent with the district's ability to meet its financial obligations.  Where that is the case, the county superintendent may stay the action "up to the point that the subsequent year's budget is approved by the county superintendent" so long as the stay does not "abrogate any provision of a collective bargaining agreement that was entered into by a school district before the date that the county superintendent of schools assumed authority pursuant to subdivision (e)."[29]  The statute places no other temporal or categorical constraints on the county superintendent's discretion.

---

[29] Ed. Code, §§ 42127.6, subds. (e)(2), (g).

7