Filed 5/17/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re Ja.O. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E079651 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J291031, J291032, J291033, J291034, J291035) |
| v. | OPINION |
| A.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

A.C. (Mother) challenges the juvenile court's dispositional finding that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)) does not apply to the dependency proceedings as to her five children. Mother contends that San Bernardino County Children and Family Services (CFS) failed to discharge its duty of initial inquiry under Welfare and Institutions Code section 224.2, subdivision (b). (Unlabeled statutory citations refer to this code.) We conclude that Mother's argument lacks merit and therefore affirm.

BACKGROUND

Mother has five children: A.C. (age 14), K.C. (age 12), J.C. (age 12), Je.O. (age 8), and Ja.O. (age 6).

On October 20, 2021, CFS received an immediate response referral from law enforcement as to all five children. On October 21, 2021, CFS detained all five children pursuant to a detention warrant. K.C. and J.C. were placed on an emergency basis in the foster home of their stepmother, Susan. A.C., Je.O., and Ja.O. were placed on an emergency basis in the foster home of nonrelative extended family members Sara and Devin.

On October 25, 2021, section 300 petitions were filed for all five children, containing allegations of sexual abuse, physical abuse, domestic violence, and substance abuse. Attached to each petition is a Judicial Council form ICWA-010(A) stating that Mother was asked by a CFS social worker about the child's Indian status on October 20,

2

2021, and provided no reason to believe the child is or may be an Indian child.[1]  Also attached to the petitions for Je.O. and Ja.O. were forms stating that their father, R.O., when asked on that same day, provided no reason to believe the child is or may be an Indian child.

The detention hearing was held October 26, 2021.  Mother and R.O. were both present in court and appointed counsel.  Both Mother and R.O. denied Indian ancestry when questioned by the juvenile court and on their Parent:  Family Find and ICWA Inquiry forms.  Mother also completed, signed, and filed a Parental Notification of Indian Status form (ICWA-020) denying any tribal affiliation or Indian ancestry.  R.O. checked box (e) under question (3) on his ICWA-020 indicating "[o]ne or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe," but he left blank the spaces provided to identify the tribe, band, and name and relationship of the ancestor.  Maternal aunt Jennifer, who was also present at the hearing, denied Indian ancestry when questioned by the court and on her Relative:  Family Find and ICWA Inquiry form.

Mother and R.O. again denied Indian ancestry when interviewed by a social worker on November 9, 2021.

On November 16, 2021, J.T., the alleged father of A.C., filed a Statement Regarding Parentage form (JV-505) requesting paternity testing.  J.T. appeared by

---

[1]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

telephone at that day's hearing, was appointed counsel, and denied Indian ancestry when questioned by the court. The court ordered paternity testing, but J.T. never provided a DNA sample. The court also ordered J.T. to complete the ICWA-020, but no completed form appears in the record.

A January 2022 mediation resulted in a partial agreement, and the remaining unresolved jurisdictional and dispositional issues were set for contest. The contested jurisdiction and disposition hearing was held on August 2, 2022. The court sustained the domestic violence and substance abuse allegations as amended in accordance with the mediation agreement. The court sustained the remaining allegations concerning R.O.'s sexual abuse of K.C., Mother's failure to protect the children from that abuse, and Mother's excessive use of corporal punishment. In addition, the court sustained the allegation that the whereabouts of A.C.'s father, J.T., were unknown. The court found that ICWA does not apply, ordered the children removed from the custody of their parents, ordered family reunification services for Mother, and bypassed services for R.O., who is not a party to this appeal.

DISCUSSION

Mother argues that CFS is required by subdivision (b) of section 224.2 to ask extended family members and others who have an interest in the children about the children's possible Indian status. Mother contends that CFS erred by failing to make any such inquiry of "various relatives and close family friends" who were readily available, including maternal aunt Jennifer, paternal grandparents of K.C. and J.C., and the godfather of Je.O. and Ja.O. Mother argues that we should vacate the court's finding that

4

ICWA does not apply and remand for CFS to conduct a proper initial inquiry of extended family members and "family friends."

We disagree with Mother's premise that subdivision (b) of section 224.2 requires CFS, as part of its duty of initial inquiry, to ask extended family members and others who have an interest in the child about the possible Indian status of every child who is or may be the subject of a section 300 petition. (Cf. § 224.2, subd. (a).) By its terms, subdivision (b) of section 224.2 applies only "[i]f a child is placed into the temporary custody of [CFS] pursuant to [s]ection 306 or county probation department pursuant to [s]ection 307."[2] (§ 224.2, subd. (b).) Thus, CFS must ask extended family members and others who have an interest in the child about the possible Indian status of a child only if that child has been placed into CFS's temporary custody pursuant to section 306. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 497 (*Robert F.*); *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (*Adrian L.*) (conc. opn. of Kelley, J.).) None of the five children here was placed into the temporary custody of CFS pursuant to section 306, so subdivision (b) of section 224.2 did not require CFS to ask the children's extended family members if they are or may be Indian children.

---

**2** The provision states in full: "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 or county probation department pursuant to [s]ection 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)

5

Section 306 permits a social worker to take a child into "temporary custody . . . without a warrant" in emergency situations—namely, when "the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety." (§ 306, subd. (a)(2).) Peace officers may also take children into "temporary custody" without a warrant when similar exigent circumstances exist (§§ 305, 305.6, subd. (a)), and section 306 also permits the social worker to take "temporary custody" of a child "who has been delivered by a peace officer." (§ 306, subd. (a)(1).) Section 307 likewise concerns warrantless detentions. It applies when the probation department takes custody from an officer who detained the child without a warrant. (§ 307 [referring to section 305, which authorizes warrantless detentions by a peace officer].) The sections that authorize officers and social workers to take warrantless temporary custody of children are in article 7 of the juvenile court law, entitled "Dependent Children—Temporary Custody and Detention" (Article 7). (Welf. & Inst. Code, div. 2, part 1, ch. 2, art. 7; *Adrian L.*, *supra*, 86 Cal.App.5th at p. 357, fn. 7. (conc. opn. of Kelley, J.).)

By contrast, subdivision (b) of section 340 provides for the issuance of "protective custody" warrants, and on a weaker showing than is required for a warrantless detention under section 306. (§ 340, subd. (b)(2); *Robert F.*, *supra*, 90 Cal.App.5th at p. 501.) The statute does not require the danger to the child to be immediate, nor does it require the

threat of physical harm, as opposed to emotional harm.  (*Robert F.*, at p. 501.)[3]  Further,

section 340 is not in Article 7.  It is in the following article, entitled "Dependent

Children—Commencement of Proceedings."  (Welf. & Inst. Code, div. 2, part 1, ch. 2,

art. 8; *Adrian L.*, *supra*, 86 Cal.App.5th at p. 357, fn. 7. (conc. opn. of Kelley, J.).)

The statutes authorizing temporary custody without a warrant and protective

custody pursuant to a warrant conform to federal case law applying Fourth and

Fourteenth Amendment protections to child welfare investigations.  (See, e.g., *Wallis v.*

*Spencer* (9th Cir. 2000) 202 F.3d 1126, 1137, fn. 8.)  Under federal law, officials may

remove a child from their parents' custody with parental consent, pursuant to a court

order, or if exigent circumstances exist.  (*Id.* at p. 1138; *Keates v. Koile* (9th Cir. 2018)

883 F.3d 1228, 1237.)  The Ninth Circuit has defined exigency for these purposes as

"reasonable cause to believe that the child is in imminent danger of serious bodily injury

and that the scope of the intrusion is reasonably necessary to avert that specific injury."

(*Wallis v. Spencer*, at p. 1138.)  The provisions of Article 7 (e.g., §§ 305, 306)

authorizing officers and social workers to take temporary custody track that definition of

exigent circumstances.  (See Seiser & Kumli, 1 Cal. Juvenile Courts Practice &

---

**3**     Subdivision (b) of section 340 requires the court to find probable cause to support that (1) the child is described by section 300, (2) there is a substantial danger to the child's safety or physical or emotional health, and (3) there are no reasonable means to protect the child's safety or physical health absent removal.  The court in this case made those findings when it issued the warrant.  But the warrant identified Penal Code section 1524, rather than Welfare and Institutions Code section 340, as the statutory basis for the warrant.  Penal Code section 1524 concerns search warrants and does not require any of the findings that the court made in this case.  Regardless of the warrant's citation to Penal Code section 1524, the court's findings show that the statutory basis for the warrant is Welfare and Institutions Code section 340.

7

Procedure § 2.30 (2023) ["The Ninth Circuit's exigency standard is essentially codified in Welf. & Inst. Code § 305 [law enforcement] and § 306 [social workers], which empower government officials to take a child into temporary custody under certain circumstances, without a warrant, if the child is in immediate danger of serious physical harm"].) Section 340 authorizes removal by court order (a warrant).

All of the children in this case were taken into protective custody pursuant to a warrant under section 340, subdivision (b). They therefore were not taken into temporary custody by CFS pursuant to section 306. Nor were they taken into temporary custody by the probation department pursuant to section 307. The expanded duty of initial inquiry under subdivision (b) of section 224.2 consequently does not apply. (*Robert F.*, *supra*, 90 Cal.App.5th at pp. 497-498, 500, 504.) As a result, Mother's argument that CFS violated its duty of initial inquiry under subdivision (b) of section 224.2 lacks merit.

After providing our tentative opinion to the parties, we allowed them to file supplemental briefs concerning the foregoing analysis. In her supplemental brief, Mother first argues that the analysis "rests on the erroneous assumption that removal by law enforcement under section 340 is an alternative to the child welfare agency taking a child into protective custody under section 306." More precisely, Mother appears to argue that because subdivision (a)(1) of section 306 authorizes a social worker to take a child "who has been delivered by a peace officer" into temporary custody, it follows that whenever a peace officer takes a child into protective custody pursuant to a warrant and then delivers

8

the child to a social worker, the child is thereby taken into temporary custody pursuant to section 306.

We disagree. Subdivisions (a) and (b) of section 340 provide for the issuance of protective custody warrants. Subdivision (c) of section 340 requires that "[a]ny child taken into protective custody pursuant to this section shall immediately be delivered to the social worker," who must then conduct an investigation "pursuant to [s]ection 309." Thus, when a peace officer takes a child into protective custody pursuant to a warrant and then complies with the statutory obligation to deliver the child to the social worker, the social worker is taking custody of the child pursuant to section 340, subdivision (c).

But subdivision (a)(1) of section 306 has no application when children are detained pursuant to a warrant under section 340, subdivision (b). Section 306 expressly involves "temporary custody," which Article 7 defines, not "protective custody" under section 340. Subdivision (a)(1) of section 306 thus applies to situations in which an officer detains a child pursuant to one of the sections in Article 7 and the officer then delivers the child to the social worker.

Moreover, if Mother's interpretation of sections 306 and 340 were correct, then most of subdivision (c) of section 340 would be surplusage. As discussed, that provision requires the social worker to conduct an investigation pursuant to section 309 when a child has been delivered to the social worker. (§ 340, subd. (c).) Section 309 is in Article 7 and describes the investigation that the worker must conduct when a child "has been taken into temporary custody under this article." (§ 309, subd. (a).) If

9

subdivision (a)(1) of section 306 referred to a child taken into protective custody under section 340, then there would be no need to specify that the social worker conduct a section 309 investigation. Section 309 would already apply, because the child would have been taken into temporary custody under Article 7. We should avoid statutory interpretations that "render any word or provision surplusage." (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038.)

Second, Mother argues that it would be "absurd" for the scope of the initial inquiry duty to be determined by whether the child was taken into custody pursuant to a warrant, and she asserts that such an interpretation would conflict with the Legislature's intent to conform California law to relevant federal guidelines. We disagree. By imposing an expanded duty of initial inquiry for children taken into custody without a warrant, the Legislature was following the recommendation in the federal guidelines. (*Robert F.*, *supra*, 90 Cal.App.5th at pp. 502-503.) The Legislature's decision to follow the federal guidelines' recommendation is not absurd. Rather, because warrantless detentions trigger various time-sensitive ICWA-related requirements that are otherwise inapplicable (§ 306, subd. (d)), it makes sense in such cases to expand the duty of initial inquiry—confirming whether the child in such a case is an Indian child is particularly urgent. (*Robert F.*, at pp. 501-502.)

The only other issue raised by Mother is that R.O. checked the box indicating Indian ancestry on the ICWA-020 that he filed at the detention hearing. Mother argues that "[t]his discrepancy was never addressed," and in her argument concerning prejudice

10

Mother adds that "[n]o attempt was made at all to clarify this apparent discrepancy." The argument lacks merit because it does not show that CFS or the juvenile court erred.

R.O. denied Indian ancestry before the detention hearing, orally on the record at the detention hearing, and when interviewed after the detention hearing. There was consequently no failure of initial inquiry as to R.O., who was asked about Indian ancestry before, during, and after the detention hearing. There was also no violation of the "affirmative and continuing duty to inquire" (§ 224.2, subd. (a)), given that CFS followed up with R.O. about Indian ancestry after he filed his ICWA-020. And given R.O.'s repeated denials, his ICWA-020 does not create reason to believe or reason to know that any of his children are Indian children, so the duties of further inquiry and notice were not triggered. (§ 224.2, subds. (e), (f).) Mother does not argue to the contrary, and she does not identify any other potential error in connection with R.O.'s ICWA-020. Her argument therefore fails.

Nothing in this opinion is intended to limit CFS's or the court's "duty of inquiry prescribed by subdivisions (a) and (c) of section 224.2. . . . [T]hose subdivisions describe the duty of inquiry that arises in every dependency case. But the plain language of those subdivisions does not require the county welfare department or the court to question extended family members as part of the initial inquiry in every case." (*Robert F.*, *supra*, 90 Cal.App.5th at pp. 503-504.) In some cases, the circumstances may require the department to interview extended family members under subdivision (a) or (c) of section 224.2. (*Id.* at p. 504.) "For instance, if the parents deny any Indian ancestry, but

a family member later contacts the social worker and volunteers that the family has Indian ancestry, then the department cannot ignore that claim.  It has a duty to follow up on the information as part of its 'affirmative and continuing duty to inquire.'" (*Ibid.*)  But Mother has not identified any such circumstances here.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ_____
J.

We concur:


CODRINGTON_____
            Acting P. J.


FIELDS_____
            J.