Filed 12/4/2025 (unmodified opn. attached)

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CAROLYN JACOBSON, | B338483 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 23STCV14788) |
| METROPOLITAN LIFE INSURANCE COMPANY, | ORDER MODIFYING OPINION; CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed on December 3, 2025, be modified as follows:

On page 21, under Disposition, add a second sentence to read as follows:

Met Life is awarded its costs on appeal.

There is a change in the judgment.

_____

WEINGART, J.          ROTHSCHILD, P. J.          BENDIX, J.

Filed 12/3/25 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CAROLYN JACOBSON,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>METROPOLITAN LIFE<br>INSURANCE COMPANY,<br><br>　　　Defendant and Respondent. | B338483<br><br>(Los Angeles County<br>Super. Ct. No. 23STCV14788) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Affirmed.

　　　　Engstrom Lee, Carl F. Engstrom; Berger Montague, Joshua P. Davis and F. Paul Bland for Plaintiff and Appellant.

　　　　Rob Bonta, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele Van Gelderen and Vivian F. Wang, Deputy Attorneys General, as Amicus Curiae on behalf of Plaintiff and Appellant.

　　　　Dentons US, Sandra D. Hauser and Michael J. Duvall for Defendant and Respondent.

_____

# INTRODUCTION

The Education Code requires disclosure of certain information by vendors offering "tax-deferred retirement investment products as described in [s]ection 403(b) of the Internal Revenue Code of 1986" (403(b) products) to public education employees. (Ed. Code, § 25100, subd. (a).)[1] The Education Code mandates this information, which is separate and distinct from any disclosures required by securities and insurance law or by self-regulatory organizations such as the Financial Industry Regulatory Authority (FINRA), be posted on a website maintained by the Teachers' Retirement Board (board). The code further prohibits a vendor from charging any fee to a public education employee which the vendor is required to, but did not, disclose on the state-maintained website. The Education Code indisputably requires these website disclosures be made to prospective purchasers of an offered 403(b) product. The question here is whether the website disclosure requirements continue to apply to an optional add-on rider for a 403(b) product after that optional rider is no longer offered to prospective purchasers, but the rider is still in force for those who selected it when it was available.

Metropolitan Life Insurance Company (Met Life) offers 403(b) products to public education employees, including its Financial Freedom Select (FFS) variable annuity. In 2010, Carolyn Jacobson purchased an FFS variable annuity. Although the income stream from a variable annuity typically depends on the performance of underlying investment options, Jacobson

---

[1] Unspecified statutory references are to the Education Code.

2

purchased with her annuity a Guaranteed Minimum Income Benefit (GMIB) rider, which guarantees minimum levels of payment from her annuity regardless of the annuity's investment performance. That optional guarantee came at a cost, and Jacobson paid Met Life an annual fee based on the value of her annuity for the protection afforded by the GMIB rider.

At the time Jacobson purchased her variable annuity in 2010, Met Life disclosed the annual fee for the GMIB rider option, and the information was published on the state-maintained website as required by the Education Code. Years later, in 2018, Met Life continued to offer the FFS variable annuity but stopped offering the optional GMIB rider to new customers; individuals such as Jacobson who previously purchased the GMIB rider continued to have its protection and continued to pay the associated fee. At some point after January 27, 2019, information about the GMIB rider fee was no longer included on the state-maintained website.

In June 2023, Jacobson sued Met Life under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), asserting Met Life was required to disclose the GMIB rider fee for posting on the state-maintained website even after it ceased offering the rider to new customers. Jacobson did not claim to have relied on the website nor to have been misled about the fee she was being charged; she instead claimed that Met Life had engaged in an unlawful business practice by charging the fee when it was not disclosed on the website, and that she had stated a viable claim for relief regardless of her lack of reliance on the website. The trial court sustained Met Life's demurrer based on the lack of alleged reliance; the court later dismissed the action

with prejudice when Jacobson declined to amend her complaint to allege reliance on what the website stated or did not state.

We affirm, but for a different reason. We conclude the Education Code did not require Met Life to continue to disclose the GMIB rider fee on the state-maintained website after Met Life stopped offering that option to prospective purchasers. Therefore, Met Life was not prohibited from charging the fee to Jacobson after that time. Accordingly, Jacobson's complaint, which is premised on the theory Met Life charged her an illegal fee, was properly dismissed.

**THE ANNUITY REGISTRATION PROCESS AND WEBSITE**

The statutory scheme at issue, section 25100 et seq., covers employees of "any local school district, community college district, or county office of education, or any state employer under the uniform state payroll system, excluding the California State University System, with employees eligible to participate in an annuity contract and custodial account as described in [s]ection 403(b) of the Internal Revenue Code of 1986." (§ 25100, subd. (c)(1).) We refer to these employees as "public education employees." The statutes were added to the Education Code by Assembly Bill No. 2506 (2001-2002 Reg. Sess.) "[t]o provide [public education] employees . . . who are eligible to contribute voluntarily to tax-deferred retirement investment options with specific information about tax-deferred products and the registered companies that offer them," including "notice of available retirement investment products from registered vendors" through "an impartial information bank to compare among registered vendors and investment options available." (Stats. 2002, ch. 1095, § 1, subds. (a), (c), (e).)

4

Section 25100 requires the board[2] to "establish a vendor registration process through which information about . . . 403(b) [products] . . . shall be made available for consideration by [public education employees]." (§ 25100, subd. (a).) Prospective vendors[3] seeking to offer 403(b) products "shall register those products with the board" and can offer to public education employees "only registered 403(b) products." (§ 25101.) As part of this registration process, a vendor must provide the board with information about itself and the products it seeks to offer, including as relevant here "[a] disclosure of all expenses paid directly or indirectly by retirement plan participants, including, but not limited to, penalties for early withdrawals, declining or fixed withdrawal charges, surrender or deposit charges, management fees, and annual fees, supported by documentation as required for prospectus disclosure by [FINRA] and the Securities and Exchange Commission [(SEC)]." (§ 25101, subd. (a)(3).)

The opportunity to register is offered once annually to vendors. (§ 25102.) Vendors must periodically renew their registration to continue offering products, and "[t]he board may require . . . an update of the information required to be provided under [s]ection 25101 with each registration renewal." (§ 25102.) In addition, "vendors shall submit to the board within the time required by the [SEC] an amendment to the information required

---

[2] See § 22109.

[3] Section 25100, subdivision (c)(2) defines who qualifies as a vendor for purposes of the statute. That definition includes a "life insurance company qualified to do business in California that provides a 403(b) product" such as Met Life. (§ 25100, subd. (c)(2)(A).)

5

to be provided under [s]ection 25101 to reflect material changes to the products or services offered that occur between registration or renewal periods." (§ 25102.)

Section 25104, subdivision (a) requires the board to "maintain an impartial investment information bank, via an Internet Web site," which the board has done with the website 403bcompare.com, "containing the information required by [s]ection 25101 about the retirement investment products offered by each registered vendor and objective comparisons of vendors and types of products." (§ 25104, subd. (a).) When a vendor provides information to the board about a material change to a product or service between renewal periods, "the board shall reflect those changes in [403bcompare.com] within the time required by the [SEC]." (§ 25102.)

Under section 25107, "[a] vendor may not charge a fee associated with a registered 403(b) product that is not disclosed, pursuant to [s]ection 25101."

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Jacobson's Complaint

As this matter comes to us at the demurrer stage, we accept as true the well-pleaded factual allegations in Jacobson's complaint but not any of its asserted conclusions of law. (*One Technologies, LLC v. Franchise Tax Bd.* (2023) 96 Cal.App.5th 748, 759.) Jacobson works as a teacher for the Los Angeles Unified School District. In December 2010, she invested in Met Life's FFS variable annuity[4] with the GMIB rider; the rider

_____

[4] Jacobson's complaint describes an annuity as "a contract between an individual and insurance company under which the

6

"guaranteed a minimum level of payments once the contract is annuitized, so long as certain criteria were met." Met Life charged 0.7 percent of the annuity's guaranteed minimum income base as an annual fee for the rider.

Met Life no longer offers the GMIB rider to new purchasers of its FFS variable annuity, "but investors (such as [Jacobson]) who were sold the rider while it was available are still permitted to make new investments that are subject to the rider fee, and continue to pay the rider's annual fee on the entirety of their account balance, including monies invested after [Met Life] stopped offering the rider on new product purchases." In the four years before the filing of her complaint on June 26, 2023, Jacobson continued to invest additional amounts in her FFS variable annuity subject to the GMIB rider. During this period, "[Met Life] failed to . . . disclose on 403bcompare.com (1) that the [GMIB] rider was offered with this product, [or] (2) the fee charged for the rider." Jacobson did not claim, however, to have looked at the website during this time or to have been misled about the fee Met Life was charging her for the GMIB rider.

Jacobson asserted that section 25107 barred Met Life from collecting the GMIB rider fee once disclosures about it disappeared from 403bcompare.com, and that the charging of this fee during this period constituted an "unlawful" business practice

individual makes a lump-sum payment or series of payments and, in return, receives a promise of regular disbursements from the insurance company for a specified future period of time or for the remainder of the individual's life," and a "variable annuity" as one that "pays an interest rate tied to the performance of the underlying investment options selected by the investor."

7

in violation of the UCL.[5]  Jacobson sought injunctive relief, restitution, and attorney's fees.  Jacobson sought to assert her UCL claim on her own behalf and also on behalf of a class of public education employees who, during the four years preceding the filing of the complaint, "were invested in a variable annuity 403(b) product issued by [Met Life] and . . . paid rider fees that were not properly disclosed on 403bcompare.com."

## B.    Met Life's Demurrer

Met Life filed a demurrer to the complaint.  Met Life argued the Education Code only required it to disclose on the state-maintained website products and optional product features actively offered for sale.  Met Life contended that Jacobson could not allege she was harmed because she had purchased the GMIB rider when the fee for it was disclosed on 403bcompare.com and Met Life had separately disclosed the fee to Jacobson directly when she purchased the rider.  Met Life requested judicial notice of two documents: (1) a copy of the page for the FFS variable annuity product on 403bcompare.com captured on January 27, 2019, which disclosed the 0.7 percent fee for the GMIB rider; and (2) an August 2018 filing Met Life made with the SEC stating that effective September 17, 2018 the GMIB rider would no longer be available to new participants in its plans, including the FFS variable annuity.

Jacobson opposed the demurrer, arguing that she had stated a claim because the Education Code obligated Met Life to disclose all fees on the state-maintained website, including any

---

[5] Jacobson's complaint also asserted other UCL-based theories, but on appeal she focuses only on the "unlawful" prong of the statute.

8

fee for an optional rider regardless of whether that optional rider was still available to new enrollees. Jacobson argued that because Met Life had not disclosed the GMIB rider fee on the 403bcompare.com website from June 2019 through June 2023, section 25107 made it unlawful for Met Life to charge the fee during that period, and Met Life therefore engaged in an "unlawful" business practice under the UCL by charging the fee. She further claimed economic injury from paying the unlawful fee. Jacobson asserted that she did not need to allege she had relied on the lack of disclosure about the GMIB rider fee on 403bcompare.com to continue investing funds subject to the GMIB rider because "[her] case [wa]s not about any misrepresentations or causing alterations in [her] behavior. It [wa]s about the charging of *per se* illegal fees."

Jacobson initially opposed Met Life's request for judicial notice but later withdrew that opposition. She did not dispute that Met Life stopped offering the GMIB rider to new enrollees at some point before 2019, or that the fee for the GMIB rider had been disclosed on the 403bcompare.com website when that feature was offered to new enrollees. Jacobson contended only that the GMIB rider fee had not been disclosed for the four years preceding her complaint, i.e., from June 2019 through June 2023.

## C.   The Trial Court's Ruling and Dismissal of the Action

After holding a hearing, the trial court sustained the demurrer. The court concluded the relevant statutory provisions required disclosure even after Met Life stopped offering the GMIB rider to new customers because Met Life still " 'offered' " the rider to those who had purchased it before that time. The court observed that section 25102 requires vendors to submit information to the board regarding material changes to offered

9

products, and the board then incorporates the information into the 403bcompare.com website, and stated that "[d]iscovery is needed to assess what [Met Life] told the board about the GMIB [r]ider and how it impacted what appears on the [w]ebsite." However, the court separately concluded that, even if Met Life was required to disclose the GMIB rider fee after it had stopped offering the rider to new customers, Jacobson had failed to establish economic harm because "[h]er theory is akin to a misrepresentation or deceit claim, yet she fails to allege reliance." The court granted Jacobson leave to amend to allege facts showing reliance.

Jacobson chose not to amend her complaint, and the trial court later dismissed the action with prejudice. Jacobson timely appealed.

## DISCUSSION

### A.    Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court's reasoning does not bind us, and we may affirm the judgment if it was correct under any theory. (*One Technologies, LLC v. Franchise Tax Bd.*, *supra*, 96 Cal.App.5th at p. 759.)

10

**B.     The UCL**

The UCL authorizes causes of action to redress "unfair competition." (Bus. & Prof. Code, § 17203.) "[U]nfair competition" includes "any unlawful, unfair or fraudulent business act or practice." (*Id.*, § 17200.) "Because Business and Professions Code section 17200 is in the disjunctive, it prohibits practices that are 'unfair,' 'unlawful' or 'fraudulent.' " (*Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234, 256.)

Jacobson focuses solely on the "unlawful" business practices prong of the UCL. "By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) Jacobson's theory is that section 25107 made it unlawful for Met Life to charge the GMIB rider fee from at least June 2019 onwards because during that time the fee was not disclosed on the 403bcompare.com website.

Under the UCL, a plaintiff must establish both injury in fact and "some form of economic injury" that has a causal connection to the unfair competition. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323, 326.) "[I]njury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized[] [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical[]' " [citation].' [Citations.] 'Particularized' in this context means simply that 'the injury must affect the plaintiff in a personal and individual way.' " (*Id.* at pp. 322-323.) A plaintiff can establish an economic injury where he or she "surrender[s] in a transaction more, or acquire[s]

in a transaction less, than he or she otherwise would have."  (*Id.* at p. 323.)  Jacobson contends Met Life's collection of the GMIB rider fee after that fee was no longer disclosed on 403bcompare.com injured her because Met Life was legally prohibited from collecting that fee.

## C.     Jacobson Fails to Establish Standing under the UCL

It is undisputed that Met Life ceased offering the GMIB rider to prospective customers at some point before 2019 and that the GMIB rider fee was included on the 403bcompare.com website through at least January 27, 2019.  It is also undisputed that the GMIB rider and its associated fee were no longer included on the website beginning at some point after January 27, 2019.  The viability of Jacobson's UCL claim thus hinges on whether the Education Code required disclosure of the GMIB rider fee on 403bcompare.com when Met Life was no longer offering the rider to new customers.

"Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]  ' " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.'  [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided." ' "  (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.)  However, we may not " 'rewrite [a] statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.)

"When the statutory language is clear and unambiguous, there usually is no need for further construction and courts adopt the plain (i.e., literal) meaning of that language. [Citation.] 'If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' " (*Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 407.) "Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)

Jacobson initially asks us to construe section 25107's prohibition on charging "a fee associated with a registered 403(b) product that is not disclosed" as applying to any product or optional rider ever registered—even if that product or optional rider is no longer offered. Section 25107 does not sweep so broadly. It provides in full, "A vendor may not charge a fee associated with a registered 403(b) product that is not disclosed, pursuant to [s]ection 25101." (§ 25107.) Section 25107 thus only prohibits vendors from charging fees they are required to disclose "pursuant to [s]ection 25101." Section 25101 in turn expressly applies to a "prospective vendor of 403(b) products that offers those products," and not, as Jacobson claims, to a vendor that no longer offers the product/optional product feature at issue.[6]

---

[6] The trial court held that even after Met Life stopped offering the GMIB rider to new customers, Met Life still " 'offered' " the rider to those who had purchased it before that time within the meaning of section 25101. Jacobson does not defend this position on appeal. In any event, we find it unpersuasive as it contradicts the commonsense definition of an

13

Section 25101 mandates that, before a prospective vendor can offer a product (including any optional riders to that product), it must provide the board for posting on 403bcompare.com "disclosure of all expenses paid directly or indirectly by retirement plan participants" should a participant select that plan and/or optional rider "supported by documentation as required for prospectus disclosure by [FINRA] and the [SEC]." (§ 25101, subd. (a)(3).) Consistent with the rest of section 25101, the prospectus disclosures required by the SEC regarding fees focus on expenses a purchaser would incur in connection with a *current* offering. (85 Fed.Reg. 25964 (May 1, 2020) [SEC Forms N-3 and N-4].)[7] The FINRA rules, which more broadly govern communications with investors, likewise do not require prospectus disclosure to include optional riders or other add-on product features not offered to new customers. (FINRA Rules,

---

offer. There is no allegation that Met Life sought to inject new terms into its agreement with Jacobson on the GMIB rider such that it made new offers to her. Rather, both Met Life and Jacobson are alleged to have continued to honor the terms of the original agreement entered into when Jacobson purchased the rider. That Met Life continued to perform under the GMIB rider after Jacobson's acceptance of its prior, original offer does not mean it made Jacobson new offers of that rider.

[7] We note that Met Life represents it filed an SEC Form N-4 in 2025 that described the GMIB rider, its cost, and that it was no longer available for purchase. However, we are not aware of any requirement in Form N-4 that Met Life make such a disclosure. Jacobson contends that Form N-4 requires disclosures of fees such as the GMIB rider fee but identifies nothing in the form which *mandates* the disclosure of such fees which are no longer offered to new customers.

14

rules 2210, 2211 <https://www.finra.org/rules-guidance/rulebooks/finra-rules/2210> [as of Dec. 2, 2025] & <https://www.finra.org/rules-guidance/rulebooks/finra-rules/2211> [as of Dec. 2, 2025].)[8]  In sum, because Met Life no longer offered the GMIB rider, it was no longer required to disclose to the board (for posting on 403bcompare.com) the fees charged for that optional feature to persons who purchased the rider before it was discontinued.[9]

Jacobson claims that the Legislature would have added the following words in italics to the statute if section 25107 applied only to currently offered products:  "A vendor may not charge a fee associated with a registered 403(b) product *currently offered* that is not disclosed, pursuant to [s]ection 25101."  Such an interpretation creates unnecessary surplusage, which we avoid when construing statutes.  (*Tuolumne Jobs & Small Business Alliance v. Superior Court, supra*, 59 Cal.4th at p. 1037.)  By cross-referencing section 25101, section 25107 already makes clear that it applies to current offerings.  There was no need for the Legislature to say the same thing twice.

As noted above, although Met Life stopped offering the GMIB rider in 2018, it continued to offer the FFS variable annuity without that optional rider.  Jacobson alternatively argues that so long as the product itself is still registered and

---

[8] We take judicial notice of FINRA Rules, rules 2210 and 2211.  (See *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1096-1097 [taking judicial notice of FINRA rules].)

[9] Our holding in this regard is restricted to sections 25100 through 25115, and does not limit continuing disclosure obligations imposed by other laws and regulations.

offered, sections 25101 and 25107 require fee disclosure on 403bcompare.com of fees related to old optional riders for that product that are no longer available for purchase. This similarly misreads those statutes. For the same reasons stated above, section 25101 does not require a vendor to disclose for posting on 403bcompare.com fees for optional product riders it no longer offers regardless of whether it still offers the underlying product. Section 25104, which establishes the state-maintained website, explicitly states what is to be posted to the website is "the information required by [s]ection 25101" about 403(b) products on offer (§ 25104, subd. (a)); the website does not need to include information beyond what section 25101 requires. Thus, section 25107 does not apply to failures to disclose for posting on 403bcompare.com information about fees charged to prior purchasers of discontinued optional riders.

Other aspects of the statutory scheme reinforce that section 25101 applies to optional product features currently on offer and was not meant to make prospective purchasers wade through years of flotsam and jetsam about obsolete riders unavailable to them. As enacted, Assembly Bill No. 2506's first section (which was not codified in the Education Code) stated that the Legislature created the website on which information provided under section 25101 is posted "to provide employees notice of *available* retirement investment products from registered vendors" through "an impartial information bank to compare among registered vendors and investment options *available*." (Stats. 2002, ch. 1095, § 1, subds. (c), (e), italics added.) It makes no sense for a vendor registering a product under section 25101 to disclose additional fees it charges only to prior purchasers based on an optional feature no longer available to public

16

education employees because that obsolete feature would not be relevant to such prospective purchasers' comparison of *available* investment options.

Additionally, public education employees are not permitted to purchase a 403(b) product until it has been registered under section 25101.  (§ 25114.)  Subdivisions (a) and (b) of section 25114 allow public education employees who purchased a 403(b) product before the 403bcompare.com website was up and running to continue contributing to such products even though they are unregistered.  If there was an obligation to make a disclosure about products or product features currently unregistered for sale but in which public education employees made permissible original investments, one would expect these older products to be subjected to on-going disclosure requirements, but the statute requires no such thing.

The statutory scheme acknowledges that aspects of registered products may change, but it handles the processing of information about those changes in a different way than that suggested by Jacobson.  When a vendor makes changes to the fees or optional riders associated with a 403(b) product, section 25102 requires the vendor to provide "an amendment to the information required to be provided under [s]ection 25101 to reflect material changes to the products or services offered that occur between registration or renewal periods," and for the board to thereafter reflect those changes on 403bcompare.com. (§ 25102.)[10]  That occurred here—after Met Life discontinued

_____

[10] Jacobson's complaint alleges that registered vendors also can make changes directly to the 403bcompare.com website.  We

17

offering the GMIB rider, that rider was removed from the list of available product features on the state-maintained website. Section 25101 does not require disclosure of fees for product features unavailable to new customers, so where a vendor ceases offering a feature to new customers "amendment" of the information required by section 25101 entails removing information about the fee, as occurred here, and not continuing to post it. (See *Black's Law Dict.* (12th ed. 2024) [defining "amendment" in relevant part as "a change made by addition, deletion, or correction"].)

Jacobson argues that "[s]ection [25102]'s repeated references to products 'offered,' in the past tense, confirms that 403(b) vendors are to keep the [w]ebsite updated for both products the vendor is currently offering *and* those that have been discontinued." Presumably Jacobson is referring to references in section 25102 regarding a vendor's submission of information "to reflect material changes to the products . . . *offered*" and the board's "receipt of information reflecting material changes or additions to the products . . . *offered*." (§ 25102, italics added.) We disagree that "offered" as used in the quoted language refers to the past tense. Jacobson provides no analysis to support her interpretation, and the context undermines it. Read logically, section 25102 refers to products being offered, not products that have been offered, because if a product was no longer offered there could be no later "material changes" to it.

---

accept this factual allegation as true for purposes of reviewing the trial court's demurrer ruling.

18

Jacobson lastly contends that, regardless of her own lack of reliance on the website, as a policy matter it would be helpful for employees to have information available on the website about fees they are being charged on a 403(b) product they have already purchased (including fees for features no longer available to new customers) because it allows them to compare their previously purchased product with current available options. We question whether this would necessarily be so, as it myopically focuses on someone like Jacobson at the expense of other prospective purchasers. A prior purchaser of something like the GMIB rider would already know the existing cost of that feature, and could use that information in connection with 403bcompare.com to see if a better option was available without cluttering the website with information about every obsolete product or product feature going back years that is irrelevant to most users. Even if it was potentially easier for some subset of employees to find information about fees they are being charged on a now-discontinued 403(b) product feature by utilizing the 403bcompare.com website (as opposed to reviewing the statements and disclosures they receive from the vendor as a result of having purchased the product), this does not compel the conclusion that sections 25101, 25102, or 25107 *require* vendors to disclose information regarding expenses charged for riders which are not available to new customers.[11]

---

[11] Jacobson alleges that "[the] 403bcompare.com [website] allows vendors to designate a product as 'Discontinued,' meaning that it is no longer offered to new investors" and claims that users of the website can compare available and discontinued products. This claim is unavailing because, regardless of the

In sum, the statutes at issue are not reasonably susceptible to the interpretation that 403(b) product vendors are required to disclose information on fees charged for optional riders that are no longer offered to new customers. Accordingly, it was not unlawful for Met Life to cease disclosing information about the GMIB rider fee in 2019 and Jacobson's UCL claim based on the theory Met Life acted unlawfully in charging her the GMIB rider fee fails.[12]

_____

website's capabilities, the applicable statutes govern what information a 403(b) product vendor must disclose and those statutes do not require disclosure of fees for optional features not available to prospective investors. Vendors of course remain free to make additional disclosure on the website beyond what the Education Code compels.

[12] Given this conclusion, we need not decide whether Jacobson was required to allege reliance, i.e., that she would have ceased contributing in her FFS variable annuity had the GMIB rider fee appeared on 403bcompare.com after June 2019. Accordingly, we do not address the arguments made by the Attorney General, whose amicus curiae brief focuses only on the issue of whether Jacobson was required to plead reliance.

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION


                                    WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.